Re: Clair COOMES and Curtis Coomes

v.

A. Wayne ADKINSON, Superintendent
Pine Ridge Indian Reservation, et al.

No. CIV76–5012.

United States District Court,
D. South Dakota.

May 14, 1976.

Ronald Clabaugh, Joseph Butler, Rapid City, S. D., for plaintiffs.

Bruce Boyd, Asst. U. S. Atty., Rapid City, S. D., Larry Long, Martin, S. D., for defendants.

## MEMORANDUM OPINION

BOGUE, District Judge:

Plaintiffs Clair and Curtis Coomes are father and son residents of South Dakota who are engaged in the business of raising cattle. Defendant A. Wayne Adkinson is employed by the Bureau of Indian Affairs (hereinafter B.I.A.) at Pine Ridge, South Dakota, in the position of Superintendent of the Pine Ridge Indian Reservation. Defendant R. D. Drapeau is employed by the B.I.A. at Aberdeen, South Dakota, in the position of Acting Director of the Aberdeen Office of the B.I.A. Plaintiffs brought this action seeking review of what they claim is a final determination of Defendant Thomas Kleppe, Secretary of the Interior, (hereinafter Secretary), through his subordinates Defendants Adkinson and Drapeau, to reject plaintiffs' lease bids on six Pine Ridge grazing units and to award three of those unit leases to Defendants Christine Thayer and Robert Soderlin.

Plaintiffs moved with notice pursuant to Rule 65 of the Federal Rules of Civil Procedure for a temporary restraining order and upon information presented at the hearings of March 10 and 12, 1976, this Court under Rule 65(b)(1) and (2), Federal Rules of Civil Procedure, granted plaintiffs' motion on March 15, 1976. Plaintiffs moved for a preliminary injunction and at the evidentiary hearings held on March 25 and 26, 1976, this Court, under authority of Rule 65(a)(2) ordered consolidation and ordered that all parties submit briefs. Since briefing is now completed and the defendants have answered, this Court proceeds in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

The following factual framework is necessary to an understanding of this case and is largely undisputed. For approximately forty years plaintiffs have leased all or a part of grazing units 27, 314, 705, 709, 710 and 733 located within the Pine Ridge Indian Reservation near Pine Ridge, South Dakota. These six parcels of land, along with some 350 other parcels, were available for lease through an arrangement whereby the individual Indian landowners, who for one reason or another did not plan to use the land themselves, authorized the Secretary, under 25 U.S.C. § 393 and 25 C.F.R. part 151, to act as their agent in leasing their land to others. Upon bids submitted in 1970, plaintiffs were awarded leases on range units 27, 314, 705, 709, 710 and 733 for a five-year period terminating October 31, 1975. During this period plaintiffs' herd of cattle numbering 1,500 more or less, became infected with brucellosis and were placed under quarantine by State Veterinarian. Apparently no attempt was made during this lease period by either the landowners or the Secretary to terminate plaintiffs' leasehold. Although the leases expired October 31, 1975, plaintiff and all other persons holding expired leases were not required to remove their cattle from their grazing units, but rather as a courtesy, the lessees were permitted by the federal defendants to holdover until after the 1975 bidding process was completed and new leases granted. On December 18, 1975, plaintiffs submitted bids on the six units they had previously leased and were occupying. On range units 27, 705, and 709, plaintiffs' bids were the only ones submitted. On units 314 and 710 Defendant Christine Thayer submitted an Indian Preference bid. On unit 733 Robert Soderlin submitted a bid of $7,261.50 in competition with plaintiffs' bid on that unit of $8,000.00.

On December 22, 1975, B.I.A. employee A. Whirlwind Horse, acting for Defendant Adkinson as Superintendent of the Pine Ridge Agency, notified plaintiffs by letter that because their herd had been quarantined, all of their bids on all six units were rejected. On December 31, 1975, under authority of Art. I § 5 of the By-Laws of the Constitution of the Oglala Sioux Tribe of the Pine Ridge Reservation, the Executive Committee met with four of its five mem-

bers in attendance and issued a Memorandum recommending that plaintiffs be granted a lease continuance on all six units for one year in order to complete the required brucellosis testing and clean up their herd. On January 16, 1976, Defendant Adkinson in his official capacity as Superintendent of the Pine Ridge Agency, notified plaintiffs by letter that the Pine Ridge office, the Aberdeen Area office, and the tribal members had all agreed to grant plaintiffs a one-year lease permit on range units 27, 705 and 709 in order to allow plaintiffs to complete the brucellosis retesting program. Superintendent Adkinson further informed plaintiffs that an oral auction would be held between plaintiffs and Robert Soderlin on unit 733 for a one-year lease.

On January 20, 1976, pursuant to 25 C.F.R. subchapter A, part 2, plaintiffs appealed the Superintendent's decision of December 22, 1975 to the Aberdeen Area Director. Before the Area Director had reached a decision on plaintiffs' appeal, Superintendent Adkinson by letter dated February 2, 1976, awarded Defendant Soderlin range unit 733 without an oral auction, and by letter dated February 5, 1976, informed plaintiffs that the agency had withdrawn the three one-year leases granted on January 16, 1976. Plaintiffs were further directed to remove all their cattle from the six units involved within thirty days and that after March 5, 1976, any cattle remaining would be in trespass and would be assessed a fine of one dollar per head per day. The Superintendent further advised plaintiffs that Defendant Thayer had been awarded units 314 and 710. On February 12, 1976, Defendant Drapeau as Acting Aberdeen Area Director informed plaintiffs by letter that the Aberdeen office had affirmed the February 2 and 5 decisions of the Superintendent, and further informed plaintiffs that the trespass penalty of one dollar per head per day would be assessed back to November 1, 1975. On February 14, 1976, the Superintendent advertised for new bids on range units 27, 705, and 709 with awards to be made on March 15, 1976. On February 17, 1976, plaintiffs filed a second administrative appeal on the Superintendent's decisions of February 2, 5 and 14. Plaintiffs have also appealed the February 12, 1976 decision of the Area Director to the Commissioner of Indian Affairs.

Based upon plaintiffs' complaint filed March 5, 1975, and testimony before this Court, plaintiffs present essentially two claims.

Plaintiffs' first claim alleges that the federal defendants denied them due process of law as guaranteed by the Fifth Amendment of the United States Constitution in that: (a) participation by the Aberdeen Office in the decisions of the Superintendent deprived plaintiffs of due process of law in that the Superintendent did not make an independent decision free from the Area Director's influence. Plaintiffs allege that their 25 C.F.R. subpart C appeal was not decided by a noninterested and impartial decision maker but rather was a prejudged foregone conclusion and a futile exercise since the Area Director was in fact reviewing his own decision, (see Plaintiffs' Brief, pp. 3, 5, 15; see also Transcript of Hearing, March 25, 26, 1976, pp. 124, 125, 129, 130); (b) the Area Director failed to follow the rules and regulations promulgated by the Secretary since he neither declared his decision of February 12, 1976 immediately effective nor stayed the effectiveness of that decision for a period of sixty days to allow for appeal as required by 25 C.F.R. § 2.3 and 25 C.F.R. § 2.18, (see Plaintiffs' Complaint, Count I, para. XII; Amended Complaint, Count II); (c) the Secretary failed to promulgate regulations which would provide for an orderly transfer of range units by requiring through regulation that bids be let well in advance of termination of existing permits, thereby allowing adequate time to accomplish the process of bidding, awarding, appealing, and transferring range units before the status and penalties of trespass attach to holdover lessees, (see Plaintiffs' Brief, pp. 1, 2, 14; see also Transcript of Hearing, March 25, 26, 1976, pp. 31, 32, 33, 34); and (d) the Secretary failed to provide by regulation and refused to grant plaintiffs' request for an opportunity

to be present at an evidentiary hearing on record with the right to call and cross examine witnesses, (*see* Plaintiffs' Complaint, Count I, para. X, para. XI).

Plaintiffs' second claim alleges that the federal defendants' decisions were arbitrary, capricious, and otherwise not in accordance with law because: (a) Section 3(h) of Pine Ridge Tribal Resolution 75–23 requires plaintiffs to participate in the State Brucellosis program but no regulations require plaintiffs to maintain at all times a quarantine free herd in order to be eligible for grazing privileges, (*see* Plaintiffs' Complaint, Count II, para. IV, *see also* Plaintiffs' Brief, p. 16); (b) an oral auction between plaintiffs and Defendant Soderlin was not held, thus, Indian owners were deprived of the highest and best lease price, (*see* Plaintiffs' Complaint Count II, para. V); (c) the award of units 314 and 710 to Defendant Thayer on an Indian Preference basis lacked essential factual support, (*see* Plaintiffs' Complaint Count II, para. VI).

Plaintiffs' attempt to posit jurisdiction in this Court on 28 U.S.C. §§ 1331, 1361, 2201 and 2202; 5 U.S.C. §§ 704, 705 and 706; and on the Fifth Amendment of the United States Constitution. Plaintiffs allege that the amount in controversy exceeds $10,-000.00.

Defendants assert that: (1) this is a suit to which the United States has not consented and, therefore, plaintiffs' action is barred by sovereign immunity; (2) this Court lacks subject matter jurisdiction; (3) the plaintiffs have not shown any proprietarial interest or entitlement that would require implementation of a hearing under the Fifth Amendment; (4) plaintiffs have not exhausted their administrative remedies, and (5) the decisions of the Superintendent and the Area Director were supported by fact, conformed to the requirements of law, and were not arbitrary or capricious.

## SUBJECT MATTER JURISDICTION

*Sovereign Immunity*

Federal Defendants contend that the doctrine of sovereign immunity deprives this Court of jurisdiction and requires dismissal of the complaint in this case. This Court does not agree. Immunity from injunctive process may not be claimed by "a Federal officer acting in excess of his authority." *Jones v. Freeman,* 400 F.2d 383, 387 (8th Cir. 1968) *citing Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 691, 69 S.Ct. 1457, 1462, 93 L.Ed. 1628, 1636 (1949). Sovereign immunity does not bar a claim which is not affirmative in nature but rather only requires the defendant officers to cease unauthorized action. *State Highway Commission of Missouri v. Volpe,* 479 F.2d 1099, 1123 (8th Cir. 1973) *citing Rockbridge v. Lincoln,* 449 F.2d 567, 573 (9th Cir. 1971). *Rockbridge* involved a class action by Navajo Indians to require the Secretary, the Commissioner of Indian Affairs, and the B.I.A. Area Director to adopt and enforce certain rules and regulations. The *Rockbridge* Court held that such a claim is not barred by the doctrine of sovereign immunity. In the instant case, as in *Rockbridge,* the plaintiffs:

. . . *are not seeking money damages from the government,* nor are they seeking to assert some right against it or to block a government project. The relief they seek does not in any way affect the sovereign power of the United States. The government is not asked to give up a right, to grant a concession, to dispose of property or relinquish authority. 449 F.2d at 573. (Emphasis added.)

Here, as in *Rockbridge,* plaintiffs merely seek a court order directing the Secretary to perform non-affirmative acts which he has a statutory fiduciary duty to do: (1) promulgate rules in the interest of Indian lessors providing dependable periodic lease payments by requiring a timely and orderly transfer of their range units; (2) provide plaintiffs an opportunity to be present at an evidentiary adversary hearing of record; and (3) comply with 25 C.F.R. § 2.3(b) and 25 C.F.R. § 2.18. This is not "affirmative action" triggering dismissal under the doctrine of sovereign immunity. *Larson, supra,* 337 U.S. at 689, 69 S.Ct. at 1461, 93 L.Ed. at 1635. The relief sought here, if

granted, will not "work an intolerable burden on government functions, outweighing any consideration of private harm." *State of Washington v. Udall,* 417 F.2d 1310, 1318 (9th Cir. 1969). *See also Davis, Administrative Law Treatise,* §§ 27.00–2 (1970 Supp.). Plaintiffs' claim that the Secretary and the Area Director have acted unconstitutionally and beyond the scope of their authority is a claim to which sovereign immunity is no defense. *Jones v. Freeman,* 400 F.2d 383, 387 (8th Cir. 1968); *Dugan v. Rank,* 372 U.S. 609, 621, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15, 24 (1963). Plaintiffs have adequately alleged that the federal defendants have taken or have threatened to take private property without due process of law. *Pierre v. Jordan,* 333 F.2d 951, 958 (9th Cir. 1964). The resolution of plaintiffs' claims depends primarily upon statutory interpretation of the federal Lease Of Restricted Allotments laws, particularly 25 U.S.C. § 393 and the regulations applicable thereto, 25 C.F.R. subchapter A, Part 2; 25 C.F.R. § 131.19; and 25 C.F.R. Part 151. As pointed out in *State of Washington v. Udall,* 417 F.2d 1310 (9th Cir. 1969), certainly "a court of the United States is an appropriate body for an interpretation of [a federal] statute. Federal courts, including the Supreme Court and ours, have often exercised powers of review over decisions of the Secretary of the Interior," 417 F.2d at 1319 (citations omitted). The Eighth Circuit has held that "an agency may not finally decide the limits of its statutory power. That is a judicial function." *State Highway Commission of Missouri v. Volpe,* 479 F.2d 1099, 1124 (8th Cir. 1973). Perhaps the most important consideration on this issue is the fact that in 25 C.F.R. § 2.3 (1975) the government has given consent to judicial review under 5 U.S.C. § 704 conditioned upon finality attaching to the administrative decision. Consequently, since plaintiffs do not ask money damages and, given finality, the government expressly consents to suit, there appears no reason pertaining to sovereign immunity why this Court should not proceed to consider the plaintiffs' claims.

*Federal Question—Due Process*

Plaintiffs properly posit jurisdiction in this Court on 28 U.S.C. § 1331 since they adequately ·have alleged that the federal defendants have taken or threatened to take private property without due process of law. *Pierre v. Jordan,* 333 F.2d 951, 958 (9th Cir. 1964). Plaintiffs' claims succeed or fail on interpretation of federal law and they seek judicial construction of 25 U.S.C. § 393; 25 C.F.R. subchapter A, part 2; and 25 C.F.R. part 151, thus, federal question jurisdiction exists. *State Highway Commission of Missouri v. Volpe,* 479 F.2d 1099 (8th Cir. 1973); *Davis Associates, Inc. v. Sec. Dept. H. E. W.,* 498 F.2d 385, 389 n. 7 (1st Cir. 1974), *citing Hopkins v. Walker,* 244 U.S. 486, 489, 37 S.Ct. 711, 713, 61 L.Ed. 1270, 1274 (1917). In addition, plaintiffs' due process claim under the Fifth Amendment invokes the power of the federal courts to grant injunctive relief against a department of the executive branch of the federal government. *Wounded Knee Legal Defense/Offense Comm. v. F. B. I.,* [507 F.2d 1281, 1284 (8th Cir. 1974); *Bell v. Hood,* 327 U.S. 678, 680, 66 S.Ct. 773, 774, 90 L.Ed. 939, 942 (1946); *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 389, 91 S.Ct. 1999, 2001, 29 L.Ed.2d 619, 622 (1971); *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952). Plaintiffs' challenge on due process grounds to the decisions made and the sanctions imposed by the Secretary render this controversy subject to the jurisdiction and equitable decree of this Court under 28 U.S.C. § 1331(a). *Wright v. Arkansas Activities Ass'n,* 501 F.2d 25, 28 (8th Cir. 1974); *Chaudoin v. Adkinson,* 494 F.2d 1323, 1327 (3rd Cir. 1974). Thus, this action arises under the Constitution and laws of the United States, *Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe,* 370 F.2d 529, 532 (8th Cir. 1967); *Sioux Valley Empire Electric Ass'n, Inc. v. Butz,* 504 F.2d 168, 173 (8th Cir. 1974), and jurisdiction exists under 28 U.S.C. § 1331.

*Mandamus*

For a complaint to state a claim upon which mandamus relief may be grant-

984

ed under 28 U.S.C. § 1361, it is imperative that plaintiffs allege that the federal defendants are officers of the United States who owe them the performance of a legal duty so plainly prescribed as to be free from doubt. *State Highway Commission of Missouri v. Volpe*, 479 F.2d 1099, 1104 n. 6 (8th Cir. 1973); *Commonwealth of Pennsylvania v. National Ass'n of Flood Insurers*, 520 F.2d 11, 25 (3rd Cir. 1975), *citing Richardson v. United States*, 465 F.2d 844, 849 (3rd Cir. 1972). Plaintiffs allege that the Secretary, and more particularly his subordinate Defendant Drapeau, has a mandatory non-discretionary duty under 25 C.F.R. § 2.3 (1975) and 25 C.F.R. § 2.18 (1975) to either stay the effective date of his decision for sixty days or include a statement that his decision of February 12, 1976 was a final decision subject to jurisdictional review under 5 U.S.C. § 704. In light of this Court's ruling above that the doctrine of sovereign immunity does not apply in this case, *State of Washington v. Udall*, 417 F.2d 1310, 1320 n. 15 (9th Cir. 1969), plaintiffs' allegations invoke federal jurisdiction under 28 U.S.C. § 1361 and, if proved, warrant mandamus or issuance of a mandatory injunction. *Panama Canal Co. v. Grace Lines, Inc.*, 356 U.S. 309, 318, 78 S.Ct. 752, 757, 2 L.Ed.2d 788, 793 (1958).

*Declaratory Judgment*

The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, does not create any new substantive right but rather creates a procedure for adjudicating existing rights. *Western Casualty and Surety Co. v. Herman*, 405 F.2d 121, 124 (8th Cir. 1968). It is procedural in nature, designed to expedite and simplify the ascertainment of uncertain rights; and it should be liberally construed to attain that objective. *Reliance Ins. Co. v. Burgess*, 112 F.2d 234, 238 (8th Cir. 1940). The Declaratory Judgment Act does not confer independent jurisdiction but rather provides an additional remedy where jurisdiction already exists. *Terminal Freight Handling Co. v. Solien*, 444 F.2d 699, 703 (8th Cir. 1971). Since this Court has determined that 28 U.S.C. §§ 1331 and 1361 invoke the jurisdiction of

this Court, jurisdiction therefore exists under 28 U.S.C. §§ 2201 and 2202 to fashion a declaratory remedy in this case if necessary. The "actual controversy" prerequisite to a determination under the Declaratory Judgment Act is present in this case and a judgment could serve a useful purpose of "clarifying and settling the legal relations in issue" and could "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Terminal Freight Handling Co. v. Solien*, 444 F.2d 699, 705 (8th Cir. 1971).

*Administrative Procedure Act*

In the event that this Court's analysis and conclusion of 28 U.S.C. §§ 1331 and 1361 jurisdiction is determined to be without merit, the principle arises that complete foreclosure of judicial review of agency action encounters serious constitutional difficulties. *See Weinberger v. Salfi*, 422 U.S. 749, 762, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522, 536 (1975). That principle of presumptive reviewability leads this Court to carefully scrutinize the issues raised by plaintiffs' last jurisdictional contention: that the A.P.A. works as an independent jurisdictional grant. This Court begins its analysis cognizant of the holding in *Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe*, 370 F.2d 529 (8th Cir. 1967) that § 10 of the A.P.A. does not by itself confer federal jurisdiction. However, since *Twin Cities* was decided, a majority of the circuits have squarely held that the A.P.A. is jurisdictionally self-executing. *Ortego v. Weinberger*, 516 F.2d 1005 (5th Cir. 1975); *Sanders v. Weinberger*, 522 F.2d 1167 (7th Cir. 1975); *Pickus v. United States*, 165 U.S.App.D.C. 284, 507 F.2d 1107 (1974); *Bradley v. Weinberger*, 483 F.2d 410 (1st Cir. 1973); *Bard v. Seamans*, 507 F.2d 765 (10th Cir. 1974); *Rothman v. Hospital Service of Southern California*, 510 F.2d 956 (9th Cir. 1975). *See also Deering Milliken, Inc. v. Johnston*, 295 F.2d 856, 863–864 (4th Cir. 1961). *Contra: Bramblett v. Desobry*, 490 F.2d 405 (6th Cir. 1974), *cert. denied*, 419 U.S. 872, 95 S.Ct. 133, 42 L.Ed.2d 111 (1974); *Chaudoin v. Atkinson*, 494 F.2d 1323

(3rd Cir. 1974). Cf. *Aguayo v. Richardson*, 473 F.2d 1090 (2nd Cir. 1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974). Additionally, in *State Highway Commission of Missouri v. Volpe*, 479 F.2d 1099, 1105 n. 7 (8th Cir. 1973) the Eighth Circuit Court of Appeals indicated in light of the intervening United States Supreme Court decisions that it may wish to reconsider its holding in *Twin Cities Chippewa*.

Those Courts which have found that § 10 of the A.P.A. confers jurisdiction have found the unavailability of other avenues of judicial review to be of primary consideration. *See Ortego v. Weinberger*, 516 F.2d 1005, 1014–1015 (5th Cir. 1975); *Sanders v. Weinberger*, 522 F.2d 1167, 1170 (7th Cir. 1975). Cf. *Weinberger v. Salfi*, 422 U.S. 749, 762, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522, 536 (1975). §§ 10(a) and (c) of the A.P.A. express this policy as follows:

> Agency action made reviewable by statute *and* final agency action for which there is no other adequate remedy in a court are subject to judicial review. (Emphasis added.) 5 U.S.C. 704. A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. 5 U.S.C. § 702.

The United States Supreme Court has repeatedly buttressed the principle of presumptive reviewability by requiring clear and convincing evidence of legislative intent to cut off judicial review. *E. g. Citizens To Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136, 149 (1971). In the event that jurisdiction in the case at bar cannot be predicated upon 28 U.S.C. §§ 1331 or 1361 and there is no avenue of judicial review other than the Administrative Procedure Act, this Court holds that in those circumstances, § 10 of the Act may provide an adequate independent jurisdictional predicate.

*Reviewability*

The extended jurisdictional inquiry in this case is not ended here, however. The test of reviewability is codified in the Administrative Procedure Act, 5 U.S.C. §§ 701, 704. The A.P.A. by its terms does not apply where either:

(1) statutes preclude judicial review; or

(2) agency action is committed to agency discretion by law. 5 U.S.C. § 701(a).

These two exceptions have been held to constitute jurisdictional hurdles, *Rothman v. Hospital Service of Southern California*, 510 F.2d 956, 958 (9th Cir. 1975), thus, jurisdiction can be found in the A.P.A. only if neither § 701(a) exception applies.

The first exception, statutory preclusion of judicial review, depends in this case upon construction of 25 U.S.C. § 393, (*see* Government Brief, p. 4), entitled Leases of Restricted Allotments which provides:

> The restricted allotment of any Indian may be leased for farming and grazing purposes by the allottee or his heirs, subject only to the approval of the superintendent or other officer in charge of the reservation where the land is located, under such rules and regulations as the Secretary of the Interior may provide . .

Clearly, 25 U.S.C. § 393 does not preclude review. The applicability of the second exception in 5 U.S.C. § 701(a)(2) to "those rare instances" of unreviewable discretionary action *Ratnayake v. Mack*, 499 F.2d 1207, 1211 (8th Cir. 1974), turns on whether the statute in question is "drawn in such broad terms that in a given case there is no law to apply." *Citizens To Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820–821, 28 L.Ed.2d 136, 150 (1971). Judicial review under a statute authorizing agency action is not precluded because some of that action may be committed to agency discretion by law. *Jones v. Freeman*, 400 F.2d 383, 390 (8th Cir. 1968). Rather, judicial review is precluded only to the extent that such discretion exists, and only to the extent that the action is *committed* to agency discretion since § 706(2)(A) authorizes a reviewing court to remedy an "abuse of discretion." Thus, all agency discretion is not insulated from judicial review. *See Da-*

*vis, Administrative Law Treatise,* § 28.16 at 964–65 (1970 Supp.).

 Preclusion of judicial review for action "committed to agency discretion" was devoted as "a very narrow exception" in *Citizens To Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136, 149 (1971); *Ratnayake v. Mack,* 499 F.2d 1207, 1210 (8th Cir. 1974). In this case the Secretary acknowledges that there is law to apply. 25 C.F.R. § 151.2 directs:

> With respect to reservations upon which the Indian Reorganization Act of June 18, 1934 (48 Stat. 984), is applicable, (as it is here), the action of the Secretary *must* follow the directions in section 6 of that Act which are: "The Secretary of the Interior *is directed* to make rules and regulations for the operation and maintenance of Indian forestry units on the principle of sustained-yield management, to restrict the number of livestock grazed on Indian range units to the estimated carrying capacity of such ranges, and to promulgate such other rules and regulations as may be necessary to protect the range from deterioration, to prevent soil erosion, to assure full utilization of the range, and like purposes." It is also the *Secretary's responsibility to improve the economic well being of the Indian people through proper and efficient resource use.* (Emphasis added).

25 C.F.R. § 151.3 entitled Objectives declares the purpose of 25 C.F.R. Part 151 and directs the Secretary and his subordinates to:

> (a) Preserve, through proper grazing forage, wildlife, and recreational values on the reservations and improve and build up these resources where they have deteriorated.
>
> (b) Promote use of the range resource by Indians to enable them to earn a living, in whole or in part, through the grazing of their own livestock.
>
> (c) Provide for the administration of grazing privileges in a manner which will yield the highest return consistent with sustained yield land management princi-

ples and the fulfillment of the rights and objectives of tribal governing bodies and individual land owners.

Thus it appears that Congress and the Secretary have settled on this point. The statute in question here was passed with a specific set of legislative objectives in mind and the lawfulness of the Secretary's exercise of discretion—his decision to regulate or not to regulate in any particular instance, as well as the particular mode of regulation chosen—is to be determined by reference to those objectives. *See Rockbridge v. Lincoln,* 449 F.2d 567, 572 (9th Cir. 1971); *Citizens To Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). In addition, 25 C.F.R. §§ 151.5, .6, .7, .10, .11, .12, .13, .14, .15, .16, .17, .18, .19, .21, .22, and .25 all contain mandatory guidelines for the Secretary and his subordinates. Thus, there is law to apply, and 5 U.S.C. § 701(a)(2) poses no bar to this Court's jurisdiction. *E. g., Ratnayake v. Mack,* 499 F.2d 1207, 1210 (8th Cir. 1974); *Mendez v. Major,* 340 F.2d 128 (8th Cir. 1965); *Rothman v. Hospital Service of Southern California,* 510 F.2d 956 (9th Cir. 1975); *County of Alameda v. Weinberger,* 520 F.2d 344, 347 n. 6 (9th Cir. 1975). The Secretary, when dealing with Indian lands, is in the position of a Trustee, *Allbaugh v. United States,* 184 F.2d 109, 110 (8th Cir. 1950), and must maintain sharp focus on and strict adherence to the concomitant fiduciary responsibilities. *Rockbridge v. Lincoln,* 449 F.2d 567 (9th Cir. 1971); *Sessions, Inc. v. Morton,* 348 F.Supp. 694, 699 (1972), aff., 491 F.2d 854 (9th Cir. 1974). The Secretary, in dealings with Indians, does not have despotic power but is subject to applicable restrictions. *United States v. Arenas,* 158 F.2d 730, 747–748 (9th Cir. 1947); *United States v. Whitmire,* 236 F. 474, 479 (8th Cir. 1916). Therefore, in the opinion of this Court, neither exception of 5 U.S.C. § 701 precludes review by this Court.

Reviewability is also controlled by 5 U.S.C. § 704 which provides:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.

As to the first § 704 prerequisite, this Court has determined above that 25 U.S.C. § 393 does not preclude review.

█ The Secretary, however, urges that plaintiffs' have an adequate remedy at law because if the Secretary is eventually found to have acted unlawfully they would have a cause of action for money damages. The Secretary argues that such action would compensate plaintiffs for the trespass fine of $1,500.00, more or less, per day from November 1, 1975 to date, the cost of moving their cattle, the lease price of substitute grazing land, and the cost of bringing such action. Even assuming arguendo that plaintiffs could obtain such remedy at law, in the opinion of this Court such remedy is wholly inadequate in view of the following: (1) confusion resulting from the delayed manner of administering these range units has caused serious hardship to plaintiffs and to Defendants Thayer and Soderlin, (2) the Indian landowners of the 40,000 acres involved here have not received any lease income since November 1, 1975, and (3) the probability that such unfortunate results could recur.

█ The Secretary also argues that judicial review is precluded in this case because plaintiffs have not exhausted administrative remedies, the February 12, 1976 decision of Acting Director Drapeau was not final, and such decision was not made immediately effective. This Court does not agree. 25 C.F.R. § 2.3(b) (1975) provides:

> If no appeal is timely filed, the decision shall be *final* for the Department. The officer to whom the appeal is directed may require an adequate bond to protect the interest of any Indian, Indian tribe or other party involved during the pendency of the appeal. In order to insure the exhaustion of administrative remedies before resort to court action, *no decision* which at the time of its rendition is subject to appeal to a superior authority in the Department shall be considered *final* so as to be agency action *subject to judicial review under 5 U.S.C. § 704 unless when an appeal is filed, the officer to whom the appeal is made shall rule that*

*the decision appealed from shall be made immediately effective.* (Emphasis added.)

25 C.F.R. § 2.18 (1975) provides:

> The Area Director *shall* render a written decision in each case appealed to him, and he *shall* include a statement that the decision *will become effective* 60 days from receipt thereof unless notice of appeal is filed with the Commissioner of Indian Affairs pursuant to § 2.10, 2.11, and 2.13 of this Part.

Contrary to plaintiffs' contentions, this Court finds that 25 C.F.R. §§ 2.3 and 2.18 (1975) are not constitutionally defective since they adequately incorporate and promote the policies and objectives set out in 25 C.F.R. §§ 151.2 and .3, protect the interests of parties involved in lease transfer transactions, allow the agency to develop a record, exercise its discretion, apply its expertise, and, possibly, discover and correct its own errors. *Jordan v. United States,* 522 F.2d 1128, 1132 (8th Cir. 1975); *First National Bank of St. Charles v. Board of Governors,* 509 F.2d 1004, 1007 (8th Cir. 1975); *Delzer Construction Co. v. United States,* 487 F.2d 908 (8th Cir. 1973).

This Court finds that under 25 C.F.R. §§ 2.3, 2.18 and 2.19 plaintiffs have diligently pursued their administrative appeals. Plaintiffs claim that "finality" has attached to the administrative decisions in this case and that judicial review is now proper. This Court agrees. Even though plaintiffs had not exhausted every step of the administrative process set out in 25 C.F.R. § 2.19 when this action was commenced, the record in this case clearly reveals that the administrative decisions were made immediately effective and constituted "final" agency action within the Secretary's definition. The Secretary has apparently considered the relevant policy considerations and determined that finality attaches to an administrative decision when: (1) no appeal is filed or an appeal is not timely filed; (2) the hearing officer rules that the decision appealed from shall be immediately effective; or (3) the Area Director includes a statement that the decision will become ef-

fective 60 days from receipt thereof unless notice of appeal is filed with the Commissioner of Indian Affairs.

█ In the instant case, there can be no doubt on the record that the February 12, 1975 appellate decision of the Area Director, when viewed pragmatically, became immediately effective. In fact, the December 22, 1975 decision made jointly by the Superintendent and the Area Director was also made immediately effective. Plaintiffs were directed to remove their cattle from the six units immediately, and that such range units would be checked soon to insure compliance. (Plaintiffs' Exhibit 3). The Superintendent's letter of February 5, 1976, granted plaintiffs 30 days to complete removal of their cattle, however, a trespass fine of one dollar per head per day was assessed for each day after such period. Roundup and removal of 1,500 head of cattle, more or less, in a thirty-day period from 40,000 acres of relatively rugged country effectively demands immediate action. On February 5, 1976 plaintiffs were further advised that units 314 and 710 had definitely been awarded to Defendant Thayer and unit 733 had definitely been awarded to Robert Soderlin. On February 12, 1976 the Acting Director assessed the trespass fine of $1,500.00 more or less per day retroactively to November 1, 1975. These orders made effective immediately were issued while plaintiffs were pursuing exhaustion of their administrative remedies. The plaintiffs were placed in the type of hardship dilemma recognized by the Supreme Court in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Plaintiffs were faced with the formidable burden and expense of locating and temporarily leasing a substantially similar tract of grazing land and moving their herd to such tract pending determination of their administrative appeal, or continuing with their herd on the six units and incurring prohibitably expensive liability under the Area Director's trespass ruling. This Court finds that the Area Director's decision when viewed "pragmatically", was ruled "immediately effective" within the meaning of 25 C.F.R. §§ 2.3 and 2.18 (1975), and "finality"

attached December 22, 1975. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *First National Bank of Fayetteville v. Smith*, 508 F.2d 1371 (8th Cir. 1974), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975); *Fidelity Television, Inc. v. F.C.C.*, 163 U.S. App.D.C. 441, 502 F.2d 443 (1974). This Court further finds that the Area Director's decision of February 12, 1976 was made "immediately effective" and was "final" on that date. In addition, the Commissioner of Indian Affairs in his decision of April 26, 1976 declared that decision to be "final for the Department." In the judgment of this Court, the agency decisions in this case are final and judicial review is proper under 5 U.S.C. § 704.

*Scope of Review*

█ The standard of this Court's review of a final decision of the Secretary is framed by 5 U.S.C. § 706, which provides in relevant part:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall . . . (2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

. . . . .

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

Because there is no statutory requirement that the agency determination be made on the record after hearing, this Court is not empowered to review under the substantial evidence standard of 5 U.S.C. § 706(2)(E). *Rothman v. Hospital Service of Southern California*, 510 F.2d 956 (9th Cir. 1975); *Ruiz-Olan v. Secretary, Dept. of H.E.W.*, 511 F.2d 1056 (1st Cir. 1975).

■ The review provisions of 5 U.S.C. § 706(2)(A) require the Court to:

. . . consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency. (Citations omitted.) *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–824, 28 L.Ed.2d 136 (1971). *See also CPC International, Inc. v. Train*, 515 F.2d 1032, 1044 (8th Cir. 1975).

The Eighth Circuit Court of Appeals has characterized the test as required that the agency decision be supported by a rational basis. *First National Bank of Fayetteville v. Smith*, 508 F.2d 1371, 1376 (8th Cir. 1974). *See also Sabin v. Butz*, 515 F.2d 1061, 1067 (10th Cir. 1975). The party challenging the agency decision must show that the decision constitutes "willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case." *First National Bank of Fayetteville, supra*; *Greenhill v. Bailey*, 519 F.2d 5, 10 n. 12 (8th Cir. 1975).

REVIEW OF AGENCY DECISIONS

After a "searching and careful inquiry into the facts," this Court is constrained to conclude that plaintiffs have met that burden.

*Superintendent's Decision*

In his December 22, 1975 decision for the Superintendent, A. Whirlwind Horse apparently interpreted the Tribal Resolution term "modified certified free" to mean quarantine free and stated his reason for rejection of plaintiffs' bids on all six units:

This Agency must reject all bids submitted by you in accordance with Item # 10 of the additional conditions and stipulations that were attached to and made part of the Sale of Grazing Privileges and in accordance with Part 3(h) of the Oglala Sioux Tribal Resolution # 75–23 that states "All permittees must *participate* in the State and Federal Brucellosis Eradication Program, any herd that has not been declared to be a *modified certified free herd* will not be allowed to graze on the Pine Ridge Reservation." *As you have a quarantined herd this Agency cannot issue a Grazing permit to you to graze female cattle on the Indian Trust land.* (Emphasis added.) Plaintiffs' Exhibit 3.

In his February 5, 1976 decision, Superintendent A. Wayne Adkinson also required a quarantine free herd and stated as the reason for rejection of plaintiffs' bids:

*The reason for rejecting your bids* was that you had a *Brucellosis quarantined herd* and Tribal Resolution No. 75–23 stated that all cattle must be *free from Brucellosis* and in accordance with 151.25. (Emphasis added.) Plaintiffs' Exhibit 7.

25 C.F.R. § 151.25 states:

Whenever livestock on Indian lands become infected with contagious or infectious diseases, or have been exposed thereto, such livestock must be *treated* and the movement thereof restricted in accordance with *applicable Federal* and *State laws* and *tribal ordinances.* (Emphasis added.)

*Area Director's Decision*

R. D. Drapeau, Acting Area Director, stated in his February 12, 1976 decision his view of why plaintiffs' bids were rejected:

The rejection of your bids resulted from your having *brucellosis infected cattle* which caused the herd to be *quarantined.*

. . . . .

In consideration of all the time you have been provided to clean up your herd of

livestock, the repeated warnings of the *necessity to have a quarantine free herd to continue grazing livestock* on the reservation we feel the Superintendent has acted properly within his authority and sustain his action. (Emphasis added.) Plaintiffs' Exhibit 9.

*Decision of the Commissioner of Indian Affairs*

 In their appeal petition plaintiffs' stated:

2 . . . that they are now and have been *participating in the State and Federal Brucellosis Eradication Program* and that their *herd has not been declared a "modified certified herd"*; and that *neither the additional conditions and stipulations nor Resolution No. 75–23 requires a "quarantine free herd."*

3. That the applicant knows of no Federal, State or Tribal Ordinances which have been violated by him in regard to livestock disease control programs. (Emphasis added.)

In response to plaintiffs' appeal petition the Commission of Indian Affairs ruled:

You are correct in your statement that neither *Tribal Resolution No. 75–23* nor *item 10 of the additional conditions and stipulations requires a quarantine free herd.* However, item 3(h) of Tribal Resolution No. 75–23 and item 11 of the additional conditions and stipulations both require *participation in State and Federal Brucellosis programs.*

. . . . .

We concur with your statement that the *appellants are now and have been participating in the State and Federal Brucellosis Eradication Program and that their herd has not been declared to be a modified certified herd.* This is substantiated by the information provided Mr. Coomes, on February 11, 1976, by M. D. Mitchell, D.V.M., Executive Secretary and State Veterinarian for the South Dakota State Livestock Sanitary Board. Paragraph 2 of Mr. Mitchell's memorandum states, "In the nomenclature of the Uniform Methods and Rules which govern the proce-

dure of the National Brucellosis Eradication Program and which have been adopted by the South Dakota State Livestock Sanitary Board as their regulation pursuant to the statutory law, providing for the South Dakota Eradication Program, *there is no classification on a herd basis, as a Modified Certified Herd.* (Emphasis added.)

Thus, it is clear that Morris Thompson, Commissioner of Indian Affairs, made findings in his written decision of April 26, 1976 that squarely contradict the findings of the Superintendent and the Area Director. The Commissioner specifically made the following findings: (1) that neither Tribal Resolution No. 75–23 nor item 10 of the additional conditions and stipulations requires a quarantine free herd, (2) but that item 3(h) of the Tribal Resolution No. 75–23 and item 11 of the additional conditions and stipulations both require participation in State and Federal Brucellosis Eradication programs, and (3) that plaintiffs have been and are now participating in the State and Federal Brucellosis Eradication Program and that their herd has not been declared to be a modified certified herd. These findings by the Commissioner, which form the basis for his decision, directly reverse the findings relied upon by the Superintendent and the Area Director, and yet, the Commissioner affirmed their decisions by stating:

. . . in view of the aforementioned documentation, your appeal is *denied.* This decision is based on the *exercise of discretionary authority* and is final for the Department. (Emphasis added.)

Taking due caution not to substitute this Court's judgment for that of the agency, it is the opinion of this Court that the agency decisions under review here were not "based on a consideration of the relevant factors" and there "has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–824, 28 L.Ed.2d 136, 153 (1971); *CPC International, Inc. v. Train,* 515 F.2d 1032, 1044 (8th Cir. 1975). It is the opinion of this Court that the agency deci-

sions are not supported by a rational basis. *First National Bank of Fayetteville v. Smith*, 508 F.2d 1061, 1067 (8th Cir. 1974). This Court finds, as did Commissioner Thompson, that the Superintendent and the Area Director erred in construing Tribal Resolution No. 75–23 and item 10 of the additional conditions and stipulations to require a quarantine free herd as a prerequisite to grazing privileges. This Court further finds, as did Commissioner Thompson, that item 3(h) of Tribal Resolution No. 75–23 and item 11 of the additional conditions and stipulations, both require participation in State and Federal Brucellosis Eradication Programs, and that plaintiffs have been and are now participating in such programs. This Court, however, parts company with Commissioner Thompson at this point. It simply is not rational, in light of the above findings, for Commissioner Thompson in an "exercise of discretionary authority," to affirm the contradictory decisions of the Superintendent and the Area Director that plaintiffs' bids must be rejected solely upon the basis that their herd contains Brucellosis infected cattle and therefore has been quarantined. The Secretary's fiduciary duties dictate that his "exercise of discretionary authority" is not absolute despotic power but is subject to restrictions. The B.I.A., in administratively dealing with land transactions under 25 U.S.C. § 393, is not free to take unreasoning action, without consideration and in complete disregard of the facts or circumstances of the case. *First National Bank of Fayetteville v. Smith*, 508 F.2d 1371, 1376 (8th Cir. 1974); *Greenhill v. Bailey*, 519 F.2d 5, 10 n. 12 (8th Cir. 1975).

 Upon further "searching and careful inquiry into the facts," *C. P. C. International, Inc. v. Train*, 515 F.2d 1032, 1044 (8th Cir. 1975), it further gives this Court grave concern to note that not one of the agency reviewing officers considered or even mentioned the position of the Indian land owners in this dispute. B.I.A. officers, in their "exercise of discretionary authority" in leasing Indian land under 25 U.S.C. § 393, do not possess sufficient power to completely disregard the interest of the Indian land owners. Under 25 U.S.C. § 393 Congress granted to the Secretary limited supervisory power over Indian lands. *Gray v. Johnson*, 395 F.2d 533 (10th Cir. 1968). It has long been recognized that when the federal government enacts a statute on behalf of and for the benefit of Indian Tribes and their members, the Government commits itself to a guardian-ward relationship with that tribe and its members. *See, e. g. Heckman v. United States*, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820 (1912); *United States v. Kagama*, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228 (1886); *Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832); *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 8 L.Ed. 25 (1831). It is clear that 25 U.S.C. § 393 has as its purpose the protection of lands belonging to Indian Tribes and their members and the prevention of fraud and unfairness in leasing those lands. 25 U.S.C. § 393 creates a fiduciary relationship between the Federal Government and the Indian Tribes and their members and imposes a strict and distinctive obligation of guardianship-trust upon the Secretary in his dealings with their land. *Joint Tribal Council v. Morton*, 388 F.Supp. 649, 662–663 (N.D.Me.1975), aff., 528 F.2d 370, 379 (1st Cir. 1975); *See, e. g. Tiger v. Western Investment Co.*, 221 U.S. 286, 315, 31 S.Ct. 578, 586, 55 L.Ed. 738, 749 (1911); *United States v. Kagama, supra; Worcester v. Georgia, supra; Cherokee Nation v. Georgia, supra; Lone Wolf v. Hitchcock*, 187 U.S. 553, 565, 23 S.Ct. 216, 221, 47 L.Ed. 299, 306 (1903). In *Seminole Nation v. United States*, 316 U.S. 286, 296–297, 62 S.Ct. 1049, 1054–1055, 86 L.Ed. 1480, 1490–1491 (1942), the Court recognized that the United States "has charged itself with moral *obligations of the highest responsibility and trust.* Its conduct, as disclosed in the acts of those who represent it in dealing with the Indians, should therefore be judged by the *most exacting fiduciary standards.*" 316 U.S. at 297, 62 S.Ct. at 1055, 86 L.Ed. at 1490. (Emphasis added.) And as the Court pointed out in *Joint Tribal Council v. Morton*, 388 F.Supp. 649, 663 n. 14 (D.Me.1975), *citing, Scott, Law of Trusts* (3rd Ed.1967) § 7

at 71, the guardian-trustee "is entrusted with . . . management of his ward's property but *he does not take title to it.*" (Emphasis added.) From the conduct and decisions made by the B.I.A. in this case directly affecting 40,000 acres of Indian land, it appears that the B.I.A. believes it holds this land in fee title absolute. No mention was made and apparently no consideration was given in the written B.I.A. decisions to the economic interest of the Indian owners. Lloyd W. Eagle Bull in his testimony before this Court stated that the Executive Committee of the Oglala Sioux Tribe met on December 31, 1975, under authority of Article I § 5 of the By-Laws of the Constitution of the Oglala Sioux Tribe, to consider the dispute. After consulting with tribal members, the Executive Committee issued a Memorandum recommending that plaintiffs be granted a lease continuance on all six units for one year to give plaintiffs time to comply with the Brucellosis retesting program. Mr. Lloyd W. Eagle Bull, Secretary of the Oglala Sioux Tribe for the past twenty-five years, in answer to the following questions, stated:

> Q. . . . In Plaintiffs' Exhibit 4, which is a letter from Mr. Adkinson, the Superintendent to Mr. Cummings, dated January 16, it states that the Tribal Executive Committee recommended that Mr. Coomes be entitled to operate one more year under the range-unit system with certain conditions and qualifications for three range units: 27, 705, and 709.
>
> Did the Executive Committee meet and make such recommendation?
>
> A. The Executive Committee did not meet. However, the members of the Executive Committee, not in a formal meeting, but the situation at hand where Coomes was concerned, we adopted a motion—a memorandum—by signature of each member of the Executive Committee.
>
> Q. Were you one of those members?
>
> A. Yes.
>
> Q. That was the recommendation of the Executive Committee?
>
> A. It was. Yesterday I heard the phrase mentioned in here *"self-determination"* and we thought we was *exercising the right of self determination* by the Executive Committee.
>
> However, the *B.I.A. completely ignored self determination by the Tribe.*
>
> They used the phrase of that's whatever you want to do, and our recommendation was—because we were thinking but not according to the relation of the B.I.A., but *we were thinking about the people involved.*
>
> Q. What people would that be?
>
> A. The *landowners that depend upon the leases for their income, their livelihood.* And we knew that like something going on now that—the reason we made the recommendation is we thought *in a year's time that this whole problem would be settled, that as far as the Indian landowners are concerned, as to this they would be getting their lease rental. So far they haven't got them.* (Emphasis added.) Transcript of Hearing, March 25 and 26, 1976, pp. 107–108; *See* Plaintiffs' Exhibit 11.

The B.I.A. officers are not landowners with free choice in dealing with this land, but rather are servants of the Indian people. The Secretary's failure, through B.I.A. subordinates, to recognize and give serious consideration in their written decisions to the stated economic interest of the Indian landowners constitutes a serious breach of the Secretary's fiduciary duties. Such failure also contradicts 25 C.F.R. § 151.2 which states:

> It is also the Secretary's *responsibility to improve the economic well being of the Indian people* through *proper and efficient resource use.* (Emphasis added.)

Such failure also violates the objectives set out in 25 C.F.R. § 151.3:

> (c) Provide for the administration of grazing privileges in a manner which will

yield the highest return consistent with sustained yield land management principles and the *fulfillment of the rights and objectives of tribal governing bodies and individual land owners.* (Emphasis added.)

In the judgment of this Court, the actions of the Secretary through the B.I.A. have served the Indian people poorly in this case. It does not serve the above principles to administer the Indian landowners penniless and without their means of livelihood since November 1, 1975. If the desires of the Indian people, as expressed through their Executive Committee, were given effect, least payments would have been made from January 1, 1976. 25 U.S.C. § 450 entitled "Indian Self Determination" states:

(a) The Congress, after careful review of the Federal Government's historical and special legal relationship with, and resulting responsibilities to, American Indian people, find that—

(1) the prolonged Federal domination of Indian service programs has served to retard rather than enhance the progress of Indian people and their communities by *depriving Indians of the full opportunity to develop leadership skills* crucial to the realization of self-government, and has *denied to the Indian people an effective voice in the planning and implementation of programs for the benefit of Indians* which are responsive to the true needs of Indian communities; (Emphasis added).

25 U.S.C. § 450a entitled "Declaration of Policy" states:

(a) The Congress hereby recognizes the obligation of the United States *to respond* to the strong expression of the Indian people for *self-determination by assuring maximum Indian participation in the direction* of educational as well as other Federal services to Indian communities so as to render such services more responsive to the needs and desires of those communities.

(b) The Congress declares its commitment to the maintenance of the Federal Government's unique and continuing relationship with and responsibility to the Indian people through the establishment of a meaningful Indian self-determination policy which will permit an orderly transition from Federal domination of programs for and services to Indians to *effective and meaningful participation by the Indian people in the planning, conduct, and administration of those programs and services.* (Emphasis added). *See also* 5 U.S.C. § 450k.

In failing to consider and give effect to the Executive Committee's recommendation, the Secretary clearly violated the congressional policy of self determination.

Based upon the above authorities and upon the above reasoning, it is the opinion of this Court that the Secretary's decision, comprised of the Superintendent's, Area Director's, and Commissioner's decisions, is one final agency action which is unlawful under 5 U.S.C. § 706(2)(A) and (B) and therefore must be set aside. This Court finds the Secretary's action (1) arbitrary, capricious, an abuse of discretion, and not in accordance with law, and (2) in excess of statutory jurisdiction authority, and limitations, and short of statutory right. The Secretary's decision is not supported by a rational basis and constitutes willful, unreasoning action, without consideration and in disregard of the facts and circumstances of this case.

## CONSTITUTIONAL CLAIMS

*Due Process Hearing*

 The plaintiffs' seek a judgment requiring the Secretary to afford them a "due process" type of hearing before initially denying any bids for grazing units. The federal defendants claim that plaintiffs were not entitled to a hearing because they possessed no property right cognizable under the Fifth Amendment of the United States Constitution. (*See* Defendants' Brief, p. 10). This Court does not agree. The "rights-privileges" dichotomy, *e. g. United States v. Walker*, 409 F.2d 477 (9th Cir. 1969), has been repudiated. At most, it is but one factor to be considered. *East*

*Oakland-Fruitvale Planning Council v. Rumsfeld*, 471 F.2d 524, 532 n. 7 (9th Cir. 1972). The Supreme Court in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), said that "the Court has fully and finally rejected the wooden distinction between 'rights' and 'privileges' that once seemed to govern the applicability of procedural due process rights." *Id.* at 571, 92 S.Ct. at 2706, 33 L.Ed.2d at 557. Instead, the Court has adopted the test of whether the person claiming a violation of due process had a sufficient "property interest" in the government benefit denied by the agency. The test for identifying a sufficient property interest is not clearly defined. The Supreme Court capsulized the meaning of the term in *Roth* by noting that:

. . . certain attributes of "property" interests protected by procedural due process emerge from these decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is the purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561. *See also Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (Opinion of Rehnquist, J., in which Burger, C. J., and Stewart, J., joined); *Buhr v. Buffalo Public School District No. 38*, 509 F.2d 1196, 1200 (8th Cir. 1974).

Ordinarily an unsuccessful bidder for government benefits, without more, has an insufficient property interest to invoke procedural due process protections. *Thompson v. Link*, 386 F.Supp. 897 (E.D.Mo.1974). The plaintiffs here, however, do have more. The plaintiffs' lease on range units 27, 314, 705, 709, 710, and 733 expired October 31, 1975. As a matter of policy, however, the B.I.A. granted plaintiffs and all other lessees occupying some 350 grazing units hold-

over status with the right to remain on the land pending award of new leases. The federal defendants admit that plaintiffs and others were granted a lease continuance as a "courtesy". *See* Defendants' brief, pp. 9, 14. It has been recognized that a de facto tenure policy gives rise to sufficient property interests to require the protections of procedural due process. In *Buhr v. Buffalo Public School District No. 38*, 509 F.2d 1196 (8th Cir. 1974), the Court said:

Procedural due process is likewise required where the teacher whose dismissal is being contemplated, while not formally tenured, has held his job pursuant to a de facto tenure policy under which he had a legitimate claim to continued employment and thus a "property interest" therein. 509 F.2d at 1199, *citing, Roth, supra*, 408 U.S. at 576–578, 92 S.Ct. at 2708–2709, 33 L.Ed.2d at 560–562; *Sindermann, supra*, 408 U.S. at 599–603, 92 S.Ct. at 2698–2700, 33 L.Ed.2d at 578–581.

In addition, on January 16, 1976, Superintendent Adkinson advised plaintiffs by letter that:

In regard to the Tribal Executive Committee's recommendation that you be allowed to operate one more year under the range unit system on the Pine Ridge Reservation, *Agency* personnel met with *Area Office* personnel and *Tribal* members and *it was agreed* that you be allowed to have a permit for a one year period on range units 27, 705, and 709. It was also *agreed upon* that you and the other bidder (Defendant Soderlin) on range unit 733 be given an *opportunity to enter into Oral Auction for this range unit.* (Emphasis added.) Plaintiffs' Exhibit 4.

This Court finds that the B.I.A. in (1) granting plaintiffs' holdover status, (2) awarding to plaintiffs upon agreement of the Superintendent, Area Director, and the Tribal members, a one-year lease on units 27, 705, and 709, and (3) granting plaintiffs, again upon full agreement, the right to enter into Oral Auction with defendant Soderlin for range unit 733, vested in plaintiffs sufficient property interests to invoke

procedural due process protections. Plaintiffs rely for their livelihood on their continued right to the land in question at least as much as welfare recipients rely on continued welfare benefits, *see Goldberg v. Kelley,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); or as unemployed persons rely on unemployment compensation, *see Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); or any citizen relies on a tax exemption, *see Speiser v. Randall,* 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); or as a school child relies on not being suspended, *see Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); or as any person relies on his driver's license not being revoked. *See Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). *See also Pence v. Kleppe,* 529 F.2d 135, 141 (9th Cir. 1976). This Court therefore holds that the termination without a due process hearing of plaintiffs' interests in units 27, 705, 709 and 733 on February 5, 1976 by federal defendants, violated plaintiffs' due process rights guaranteed by the Fifth Amendment to the United States Constitution.

However, this does not mean a formal trial must be held. In the absence of specific rules and regulations by the Secretary, this Court deems an informal procedure which meets the minimal requirements of fair play and provides reasonable opportunity to be heard, complies with due process. The Eighth Circuit Court of Appeals in *Brouillette v. Board of Directors,* 519 F.2d 126, 128 (8th Cir. 1975) has determined general minimal requirements of due process, and as applied appropriately to this situation, *Bell v. Burson,* 402 U.S. 535, 541–542, 91 S.Ct. 1586, 1590–1591, 29 L.Ed.2d 90, 95–96 (1971), are: (1) clear and actual notice of the reasons for termination in sufficient detail to prepare and present evidence relating to them, (2) notice of the names of persons who have knowledge of facts adverse and relied upon for termination and the opportunity to examine each of them as to knowledge and credibility, (3) a reasonable time and opportunity to present testimony in defense; and (4) a hearing on record before an impartial board or tribu-

nal. This Court upon consideration of the interest involved under 25 U.S.C. § 393, and based upon the record presented to this Court, finds, that absent such due process procedure, the Secretary's present fact finding process is inadequate and fails to comport with the dictates of due process. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976).

*Compliance With Regulations*

Plaintiffs seek an order compelling the federal defendants to comply with 25 C.F.R. §§ 2.3 and 2.18 (1975). The rule is well established that: "An agency of the government must scrupulously observe the rules, regulations, or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down." *United States v. Heffner,* 420 F.2d 809, 811 (4th Cir. 1969), *citing United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954) and other cases. *See also Cross v. United States,* 512 F.2d 1212, 1218 n. 9 (4th Cir. 1975); *McCourt v. Hampton,* 514 F.2d 1365, 1370 (4th Cir. 1975); *United States v. Leonard,* 524 F.2d 1076, 1089 (2nd Cir. 1975); *Vitarelli v. Seaton,* 359 U.S. 535, 546–47, 79 S.Ct. 968, 976, 3 L.Ed.2d 1012, 1020–1021 (1959) (concurring opinion of Mr. Justice Frankfurter). This rule is strictly applied when constitutional or statutory rights are violated. *United States v. Schwartz,* 176 F.Supp. 613, 615 (E.D.Pa.1959), aff'd, 283 F.2d 107 (3rd Cir. 1960), *cert. denied,* 364 U.S. 942, 81 S.Ct. 461, 5 L.Ed.2d 373 (1961).

In the instant case, this Court finds that the Area Director did not comply with the rules and regulations in rendering his decision of February 12, 1976. Under 25 C.F.R. §§ 2.3(b) and 2.18 (1975) set out in full above, the officer to whom the appeal is made shall either: (1) rule that the decision appealed from is immediately effective under § 2.3, or (2) rule that the effective date of his decision is stayed for a period of at least sixty days under § 2.18, unless an appeal is filed from his decision and then, in that event, an additional period of time may be necessary to complete the appeal

process. It is the opinion of this Court that until the appeal process is final, the prior lessee should not be forced to vacate and the status and penalties of trespass should not attach. In order to promote the policies and objectives stated in 25 C.F.R. §§ 151.2 and .3 set out in full above, and to promote efficient management of range units, the Secretary has wisely decided in 25 C.F.R. §§ 2.3(b) and 2.18 that B.I.A. officers must not force a prior lessee to vacate until the administrative decision identifying which bidder is to be awarded the new lease is final. As discussed above, the administrative decision becomes final when: (1) no appeal is filed or an appeal is not timely filed; (2) the hearing officer rules that the decision appealed from is immediately effective; or (3) the Area Director includes a statement that the effect of the decision appealed from is stayed for a period of sixty days unless an additional period is granted when an appeal is filed with the Commissioner of Indian Affairs. Based upon the above, this Court finds that failure of the Area Director to comply with the Secretary's rules and regulations violated Plaintiffs' procedural due process rights under the Fifth Amendment of the United States Constitution.

*Failure to Promulgate Regulations*

When this issue is analyzed from a practical common sense point of view, it is clear that this dispute and other similar cases would not have to be brought if the Secretary had provided appropriate regulations. Transfer of leases is a critical phase of the Secretary's responsibilities under 25 U.S.C. § 393. As discussed earlier, because of 25 C.F.R. §§ 151.2 and .3, 25 U.S.C. § 450, and the guardian-trustee standard set out in *Seminole Nation v. United States,* 316 U.S. 286, 296–297, 62 S.Ct. 1049, 1054, 86 L.Ed. 1480, 1490–1491 (1942), the Secretary and the Commissioner do not possess unbridled discretion to refuse to regulate, but rather shall exercise discretion in deciding what regulations to promulgate commensurate with "moral obligations of the highest responsibility and trust. Its conduct, as disclosed in the acts of those who represent it in dealings with the Indians, should therefore be judged by the most exacting fiduciary standards." 316 U.S. 296–297, 62 S.Ct. 1054. Moreover, statutes such as 25 U.S.C. § 393, passed for the benefit of Indian tribes and their members are to be liberally construed in favor of the Indians, and any doubt as to the proper construction is to be resolved in the latter's favor. *Squire v. Capoeman,* 351 U.S. 1, 6–7, 76 S.Ct. 611, 614–615, 100 L.Ed. 883, 888–889 (1956); *Holt v. Commissioner of Internal Revenue,* 364 F.2d 38 (8th Cir. 1966). The lawfulness of the Secretary's and the Commissioner's exercise of discretion under 25 U.S.C. § 2, their decisions to regulate or not to regulate in any particular instance, as well as the particular mode of regulation chosen, is to be determined by reference to the above objectives and standards. *Rockbridge v. Lincoln,* 449 F.2d 567, 572 (9th Cir. 1971); *see generally Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

It is the judgment of this Court, in view of the above guidelines, that the Secretary and the Commissioner have unlawfully failed to promulgate regulations which would effect an orderly transfer of range units by requiring that bids be submitted well in advance of the termination of existing permits in order to allow adequate time to accomplish the process of advertising, bidding, awarding, appealing, and transferring range units before the status and penalties of trespass attach to holdover lessees. *See Transcript of Hearing,* March 25, 26, 1976, pp. 31, 32, 33 and 34. Although leases run for five years, it is patently clear that even given this period of time the B.I.A. is incompetent to effectively manage the critical lease transition phase without specific guidance in the form of regulations. Clear unequivocal regulations complete with reasonable time schedules would afford relief from the uncertainty, insecurity, arbitrariness, and controversy giving rise to this proceeding. Most importantly, such regulations would go far in meeting the government's primary obligation in its role as guardian-trustee: to pro-

vide for fair and efficient administration of grazing privileges in a manner which will yield the highest return consistent with sustained yield land management principles and thereby provide a constant flow of lease income to Indian landowners.

From the record in this case it is blatantly clear that the Secretary and the B.I.A. have completely failed in their fiduciary duties. The Indian landowners have not received any lease income for almost six months. Plaintiffs Clair and Curtis Coomes and Defendants Christine Thayer and Robert Soderlin, through administrative bungling, have unnecessarily been placed in hardship. On this record it is not difficult to understand why those who participate in this and other programs become seriously disillusioned and irritated with the Bureau of Indian Affairs.

## REMEDY

Based upon the above findings and conclusions, this Court is of the opinion that equity is best served in these circumstances by giving full force and effect to the January 16, 1976 decision of Superintendent A. Wayne Adkinson. As Superintendent Adkinson points out, this decision was made pursuant to the Tribal Executive Committee's recommendation and was agreed upon by the Superintendent, the Area Director and Tribal members. Thus this Court orders that (1) plaintiffs shall be awarded grazing units 27, 705, and 709 for a one year period commencing May 15, 1976, and terminating May 15, 1977; (2) plaintiffs shall pay the amount of lease due on these three units from November 1, 1975, to date, forthwith; (3) plaintiffs shall agree to accept permits for one year on units 27, 705, and 709, with waiver of the five year permit term set forth in the advertisement; (4) plaintiffs shall collect their cattle and contain them on range units permitted them within thirty days; (5) plaintiffs shall continue active participation in the Brucellosis program, including a retesting of their full herd every sixty days or at intervals set by Dr. M. B. Mitchell, D.V.M., until such time as the herd is free of Brucellosis.

The Secretary shall forthwith provide, with written timely notice, an Oral Auction between plaintiffs and Defendant Robert Soderlin for range unit 733 for a period of one year from May 15, 1976 to May 15, 1977. The Secretary shall take particular care to ascertain which parties have used unit 733 for what period of time since November 1, 1975 and allocate lease charges accordingly. Upon allocation the parties shall pay such charges forthwith.

As to Defendant Christine Thayer's Indian Preference Bid on range units 314 and 710, this Court finds that although the Secretary's fact finding process was wholly inadequate, in testimony before this Court it was established that Christine Thayer's bid is eligible and qualified under Oglala Sioux Tribal Grazing Resolution 75–23. Transcript of Hearing, March 25, 26, 1976 pp. 137–143. The Secretary shall award units 314 and 710 to Christine Thayer for a five year period from November 1, 1975 to October 31, 1980. Christine Thayer shall pay the lease charges due from November 1, 1975 to date as agreed forthwith.

The Secretary shall forthwith establish procedures and time schedules in accordance with this opinion to commence at least sixty days before termination of leases on units 27, 705, 709 and 733 to expedite an orderly process of advertisement, bidding, appeal and awarding of leases on these units in 1977.

Since this Court's ruling grants plaintiffs substantially the remedy requested and allows the administrative process an opportunity to accomplish its obligations under the law, this Court does not reach other issues raised by plaintiffs.

The Memorandum Opinion constitutes the findings of fact and conclusions of law of this Court in accordance with Rule 52 of the Federal Rules of Civil Procedure.