62 F.3d 1040
 102 Ed. Law Rep. 484
 Charles SCHANOU, Appellant,
v.
LANCASTER COUNTY SCHOOL DISTRICT NO. 160; Board of
Education of Lancaster County School District No. 160,
Ronald Liesveld, Paul Weber, Gary Kubicek, Jim McConnell,
Ron Oelling, James Peschong, Norman Wallman, Jim Craig, Dale
Harlan, Dennis Nosal, individually and in their official
capacity, Appellees.
 No. 94-3239.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 14, 1995.
Decided Aug. 8, 1995.
 
 Thom K. Cope, argued, Lincoln, NE, for appellant.
 Gregory H. Perry, argued, Lincoln, NE, for appellee.
 Before McMILLIAN, FAGG and HANSEN, Circuit Judges.
 McMILLIAN, Circuit Judge.
 
 
 1
 Charles Schanou (Schanou) appeals from a final judgment entered in the United States District for the District of Nebraska, holding that the policy of the Lancaster County School District No. 160 ("school district") to allow the Gideons International (Gideons) to distribute bibles on a school sidewalk after school was not unconstitutional. For reversal, Schanou argues that the school district's policy does not survive the test for an Establishment Clause violation set out in Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). For the reasons set forth below, we vacate the judgment of the district court and remand the case to the district court with instructions to dismiss the complaint.
 
 I.
 
 2
 Schanou is a resident of Lancaster County, Nebraska, and the school district. Schanou served on the school board from January 1989 to February 1990. During a school board meeting on May 11, 1989, Schanou learned that the school board had a long-standing policy to allow the Gideons to distribute bibles once a year to fifth grade students after school on a sidewalk just outside of the elementary school building. The sidewalk was, however, on school property. On the school grounds, there were two separate buildings, one for students from kindergarten through the fifth grade, and another for students in grades six through twelve. The two buildings were approximately 150 feet apart. On the day of a typical distribution, fifth grade teachers would inform their students that the Gideons would have a table set up on the sidewalk to distribute bibles, but the teachers would also tell the students that they had no obligation to take one. At the May 11 school board meeting, the superintendent mentioned that, for a reason not revealed in the record, the Gideons did not distribute bibles in the previous year. Thus, it was suggested that the Gideons be allowed to distribute bibles to both fifth and sixth grade students to make up for their previous absence. Accordingly, the Gideons distributed bibles to fifth and sixth grade students in May 1989 with the permission and approval of the school board. The sixth grade distribution took place at the end of the school day in a hallway of the upper class school building. In its memorandum opinion, the district court found, as to the sixth grade distribution, that no school board member had authorized the distribution to take place within the school building. Schanou v. Lancaster County Sch. Dist. No. 160, 863 F.Supp. 1048, 1053-54 (D.Neb.1994) (Memorandum and Order). It is undisputed that no other distribution has ever taken place inside a school building. Schanou's only child, Jace, was a sixth grade student in May 1989, and he picked up one of the Gideons' bibles.
 
 
 3
 At school board meetings in November and December of 1989, Schanou expressed his concern over the constitutionality of the board policy regarding the bible distribution, but the policy remained unchanged. In January 1990, Schanou resigned from the school board, and in May 1990, Schanou withdrew his son from the school district. Schanou claims that, as a result of his son's experience with the bible distribution and the school board's maintenance of a policy allowing such distribution, he had no choice but to remove his child from the school district, and send him to nearby Lincoln Public Schools. Schanou removed Jace approximately one year after he picked up a bible at the Gideon distribution. Thereafter, Schanou paid tuition for his son's schooling from May 1990 until sometime in 1993. Since 1993, his family has qualified for a program which allows students to attend schools outside of their home school district without paying tuition.
 
 
 4
 On November 15, 1993, approximately four and one-half years after the bible distribution incident involving Jace, Schanou sued the Lancaster County School District, the school board, and several present and past members of the school board in their official and individual capacities (collectively referred to as "defendants"). Schanou brought this action solely on his own behalf pursuant to 42 U.S.C. Sec. 1983. Schanou asserted that defendants deprived him of rights secured under the First and Fourteenth Amendments and caused him to suffer mental distress and financial losses, including the cost of transferring Jace to another school district. Schanou also sought injunctive relief to end the policy permitting the Gideons to distribute bibles at the school. At the time of the institution of this action, Jace was a junior in a high school in the Lincoln Public Schools. He graduated from high school in 1995.
 
 
 5
 The parties filed cross-motions for summary judgment, and the district court heard argument on these motions on August 23, 1994. At this hearing, the potential problems involving standing, mootness, and the statute of limitations were discussed. Further, the district court noted that defendants had raised both standing and statute of limitations arguments. However, the district court granted summary judgment in favor of defendants, disposing of the case on the merits without reference to these threshold constitutional, statutory, and prudential concerns. Schanou appeals from the district court's order denying his motion for summary judgment and granting summary judgment in favor of defendants.
 
 II.
 
 6
 "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 540, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). The limitations imposed by Article III are usually referred to as the "case or controversy" requirement. Arkansas AFL-CIO v. FCC, 11 F.3d 1430, 1435 (8th Cir.1993) (en banc). This court has defined a "case or controversy" to require "a definite and concrete controversy involving adverse legal interests at every stage in the litigation." McFarlin v. Newport Special Sch. Dist., 980 F.2d 1208, 1210 (8th Cir.1992) (McFarlin ). Federal courts must always satisfy themselves that this requirement has been met before reaching the merits of a case. Courts employ a number of doctrines to determine justiciability such as standing, ripeness, and mootness.[1]
 
 A.
 
 7
 We turn first to Schanou's claim for injunctive relief. We are aided significantly in our examination of the standing and mootness problems in the present case by our court's decision in Steele v. Van Buren Public Sch. Dist., 845 F.2d 1492 (8th Cir.1988) (Steele ). In Steele, a mother, as an individual and next friend of her three minor children, challenged a public school band teacher's prayer sessions before concerts and practices. We held that parents have a cognizable interest in their children's religious education, including the parental interest to have one's children educated in public schools that do not impose or permit religious practices. Id. at 1495, citing Abington Sch. Dist. v. Schempp, 374 U.S. 203, 224 n. 9, 83 S.Ct. 1560, 1572 n. 9, 10 L.Ed.2d 844 (1963) (Schempp ) (holding that parents have standing to challenge school-sponsored religious activities that affect their children) and Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 487 n. 22, 102 S.Ct. 752, 766 n. 22, 70 L.Ed.2d 700 (1982) (Valley Forge ) (explaining the holding of Schempp). The district court in Steele held, however, that the claims of the eldest child were mooted by her graduation, and we agreed. 845 F.2d at 1495. We nevertheless held that the mother's cognizable interest as a parent was not mooted because she still had two other children in the school system. Id.
 
 
 8
 While Steele indicates that Schanou may have once had standing to enjoin the school district's policy permitting the bible distribution by the Gideons, we need not engage in a standing analysis with regard to the request for injunctive relief because that request no longer presents a live justiciable controversy. In the time since we heard oral argument in this case, Jace, Schanou's only child, has graduated from high school. Because Schanou has no other children and his only child has no prospect of ever returning to the school district as a student, the holding of Steele teaches that, even if Schanou's request for injunctive relief once satisfied the "case or controversy" requirement, his claim for injunctive relief has now been mooted because he no longer has a cognizable parental interest. 845 F.2d at 1495; see Neighborhood Transp. Network v. Pena, 42 F.3d 1169, 1172 (8th Cir.1994) ("When a case on appeal no longer presents an actual ongoing case or controversy, the case is moot and the federal court no longer has jurisdiction to hear it."); Nomi v. Regents for the University of Minnesota, 5 F.3d 332, 334 (8th Cir.1993) (Nomi ) (same).
 
 B.
 
 9
 We next consider Schanou's claim for damages. Schanou asserted in his complaint that "[t]he unlawful acts of all of the Defendants have deprived [him] of rights secured to him by the First and Fourteenth Amendment ... and caused him to suffer mental distress, as well as monetary damages, including but not limited to those expenses incurred as a result of transferring his son to another school district." Joint Appendix at 9. Both sides agree that the relevant statute of limitations period for this Sec. 1983 action is four years. Schanou contends that the maintenance of the bible distribution policy was a continuing violation of his constitutional rights and thus no statutory bar applied. Defendants argue that, if Schanou suffered a constitutional injury at all, it occurred no later than the sixth grade bible distribution of May 1989 during which Jace picked up a bible. They reason, therefore, that, even assuming Schanou had standing as a parent to challenge the sixth grade bible distribution in May 1989, his claim, filed four and one-half years after this incident, is now barred by the statute of limitations. They also maintain that, after May 1989, neither Schanou nor Jace suffered an injury which would give Schanou standing to sue for damages under Sec. 1983.
 
 
 10
 Although Schanou's claim for damages is very generally stated in his complaint, it can be broken down essentially into two distinct components for purposes of analysis because, viewing the allegations in the light most favorable to Schanou, there are two distinct alleged injuries to Schanou's parental interest which might serve as bases for Schanou's damages claim. One possible basis for this claim is the injury to Schanou's parental interest which allegedly resulted from the May 1989 bible distribution to his son. The other involves the injury to his parental interest after May 1989 which allegedly resulted from the school board's maintenance of its bible distribution policy. In response to the defendants' statute of limitations argument, Schanou adopts this alternative basis. He contends that the school district's maintenance of the bible distribution policy continually violated his constitutional rights and justified his removal of Jace from the school district in May 1990. See Reply Brief of Appellant at 11. Because Schanou's complaint can be fairly read to assert either basis, we will examine his damages claim accordingly.
 
 
 11
 Assuming arguendo that Schanou had standing to sue under Sec. 1983 for the injury to his parental interest resulting from the May 1989 bible distribution involving his son, it is clear that the statute of limitations bars him from recovery on that basis because his complaint was not filed until November 15, 1993, over four and one-half years after the alleged injury. Thus, in order for Schanou's damages claim to survive, he has to allege some deprivation of his constitutional rights as a parent within the four years prior to the filing of his complaint. As noted above, Schanou has argued broadly that the school board's maintenance of the bible distribution policy was a continuing violation of his constitutional rights. Id. However, on the record before us, we fail to see how, in the four years prior to the filing of Schanou's complaint, the school board's policy, even if unconstitutional, infringed upon his constitutional rights as a parent so that he might have standing to recover damages under Sec. 1983.
 
 
 12
 While the doctrine of standing contains both prudential and constitutional elements, "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (Lujan). The irreducible constitutional minimum of standing contains three elements:
 
 
 13
 First, the plaintiff must have suffered an injury in fact--an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of--the injury has to be fairly traceable to the challenged action of the defendant, and not the result of independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
 
 
 14
 Id. at 560-61, 112 S.Ct. at 2136 (internal brackets, quotation marks, and citations omitted). With regard to the injury-in-fact component, our court has recently stated: "[A]lleging an injury to a cognizable interest is not enough. [Plaintiffs] must make an adequate showing that the injury is certain to ensue. Assertions of potential future injury do not satisfy the injury in fact test." Sierra Club v. Robertson, 28 F.3d 753, 758 (8th Cir.1994), citing Whitmore v. Arkansas, 495 U.S. 149, 158, 110 S.Ct. 1717, 1724-25, 109 L.Ed.2d 135 (1990) ("A threatened injury must be certainly impending to constitute injury in fact.").
 
 
 15
 As noted above, Steele held that parents have a cognizable interest in their children's religious education, and further, interpreting the Valley Forge Court's interpretation of Schempp, Steele concluded that it was implicit in the Court's reasoning that parents have a right "to have [their] children educated in public schools that do not impose or permit religious practices." Steele, 845 F.2d at 1494; see McFarlin, 980 F.2d at 1211 (recognizing the personal right of a parent to have her children educated in public schools free of religious practices). Steele relied on three cases to define the cognizable interest of a parent in the religious education of his or her children. However, none of these cases, nor Steele itself, supports the proposition that parents have standing to seek damages under Sec. 1983 for the maintenance of an allegedly unconstitutional school policy in the absence of any allegations that the policy directly affects or threatens to directly affect any of the parent's children.
 
 
 16
 We begin our analysis of the limits of parental standing with the precise language of Schempp. Specifically, the Court stated: "The parties here are school children and their parents, who are directly affected by the laws and practices against which their complaints are directed. These interests surely suffice to give the parties standing to complain." 374 U.S. at 224 n. 9, 83 S.Ct. at 1572 n. 9 (emphasis added). Schempp disposed of two cases both involving the school-wide recitation of bible verses. In the case of the Schempp family, the parents challenged a Pennsylvania state statute requiring the reading of ten bible verses at the beginning of each school day. At the school attended by the Schempp children, the bible readings were broadcast to the entire student body over a loudspeaker system. In Valley Forge, the Court explained that the parents had standing in Schempp because "impressionable schoolchildren were subjected to unwelcome religious exercises or were forced to assume special burdens to avoid them." 454 U.S. at 487 n. 22, 102 S.Ct. at 766 n. 22 (emphasis added). In Schempp, the infringement upon the parental interest was clear and continual, and the comment in Valley Forge on the parents' standing in Schempp in no way dislodged the Schempp holding from its factual underpinnings. The last case relied upon in Steele was Bell v. Little Axe Indep. Sch. Dist., 766 F.2d 1391 (10th Cir.1985) (Bell ). In that case, parents challenged a school district's practice of allowing teachers to conduct religious meetings on school grounds during school hours. The meetings were advertised throughout the school and open to all students. Addressing the question of parental standing, the Tenth Circuit held that "parents can[ ], on their own behalf, assert that the state is unconstitutionally acting to establish a religious preference affecting their children." Id. at 1398 (emphasis added). It is thus clear that, in all of these cases, the parent-plaintiffs had standing to challenge the alleged unconstitutional school practices because these practices directly affected their children. See also Grove v. Mead Sch. Dist. No. 354, 753 F.2d 1528, 1532 (9th Cir.) (holding plaintiff had standing as a parent "whose right to direct the religious training of her child was allegedly affected"), cert. denied, 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 70 (1985).
 
 
 17
 Our understanding of these cases is supported by the Tenth Circuit's subsequent decision in Roberts v. Madigan, 921 F.2d 1047 (10th Cir.1990) (Roberts), cert. denied, --- U.S. ----, 112 S.Ct. 3025, 120 L.Ed.2d 896 (1992). In that case, parents and an elementary school teacher sought injunctive relief and damages against public school officials for their decision to remove a bible from the school library, to remove certain religious books from the teacher's classroom library, and to direct the teacher to keep his bible out of sight and refrain from silently reading it during school hours. In order to establish their parental standing, the parents relied upon a number of cases in which students and their parents were found to have standing to challenge alleged First Amendment violations in the public schools. After reviewing these cases, including Schempp and Bell, the Tenth Circuit concluded:
 
 
 18
 We agree that each case cited by plaintiffs supports the notion that students and their parents may challenge unconstitutional actions in the public schools that directly affect the students. The cases cited, however, are distinguishable from the present case because each involved religious activities occurring school wide or within the plaintiffs' own classrooms. Because none of the students involved in this suit were in Mr. Roberts' class at the time this suit was filed, none of the students, and therefore none of their parents, were directly affected by the district's actions in Mr. Robert's classroom.
 
 
 19
 Roberts, 921 F.2d at 1051 (emphasis in original). Thus, while the decisions of school officials may have violated the First Amendment, the court concluded the mere fact that the parents had children in the school district was not sufficient to confer standing upon them. Id. at 1052.
 
 
 20
 In Steele, our court stated that the mother's parental interest would continue "so long as she ha[d] children in the local schools." Id. at 1495. However, the language of that opinion cannot be divorced from its factual context. In addition to the daughter whose claim was mooted by graduation, Steele had two younger daughters, and she had alleged that they too "had been subjected to Bible reading and prayer at mandatory school functions." 845 F.2d at 1494. It is implicit in Steele that the possibility that Steele's two younger daughters could be subjected to further unconstitutional practices satisfied the injury-in-fact requirement and thus allowed Steele to assert parental standing to seek declaratory and injunctive relief. See McFarlin, 980 F.2d at 1211 (describing the challenged activity in Steele as "continuous and affect[ing] many students" as opposed to an isolated instance).
 
 
 21
 The party invoking federal jurisdiction bears the burden of establishing the elements of standing. Lujan, 504 U.S. at 561, 112 S.Ct. at 2136. In response to a motion for summary judgment, the plaintiff cannot rest on mere allegations, but must set forth specific facts, which for purposes of the summary judgment motion will be taken as true. Id. In the present case, it is undisputed that the bible distribution by the Gideons was limited to fifth grade students. The sixth grade distribution which involved Jace was a one time exception. Yet, with regard to his claim for damages, Schanou has not even come forward with mere allegations that bible distributions occurring after May 1989 might have targeted Jace, or even that they might have affected his son or himself in any way, had Jace remained in the school district.[2] Schanou has completely failed to demonstrate how the maintenance of this policy continued to injure, or even threatened to injure, Jace or himself. Thus, after the May 1989 bible sixth grade distribution, the connection between Jace and the challenged practice was simply too tenuous for Schanou to have standing to recover damages as a result of the allegedly unconstitutional school board policy. Viewing the record in the light most favorable to Schanou, we do not think that Schanou has satisfied the Article III standing requirements to sue for damages resulting from the school district's maintenance of the bible distribution policy in the four years preceding the filing of this lawsuit because he has not shown an injury-in-fact. See Valley Forge, 454 U.S. at 485, 102 S.Ct. at 765 (holding plaintiffs failed to identify any personal injury suffered by them as a consequence of the alleged constitutional error).
 
 
 22
 While Schempp and Steele recognize that parents have a personal cognizable interest in the religious education of their children, the Steele holding on mootness and the Roberts holding on standing remind us that this interest is derivative in nature. Accordingly, we think it is logically impossible for a parent to assert the unconstitutional infringement of a parental interest when the alleged unconstitutional policy or conduct in no way directly affects or threatens to directly affect his or her children. A contrary understanding would result in a significant expansion of parental standing. We do not believe that Schempp or Steele intended such a broad definition. Absent specific facts demonstrating the continuing or threatened direct effect of the allegedly unconstitutional policy on his child or himself, the mere fact that Schanou's son was once a student in a school district which allows yearly bible distribution to fifth grade students after school does not confer standing upon Schanou to seek damages under Sec. 1983.[3]
 
 III.
 
 23
 For the reasons discussed above, we vacate the order of the district court and remand the case to district court with instructions to dismiss the complaint.[4]
 
 
 
 [1]
 The district court in the present case should not have addressed the constitutional issues in order to avoid other threshold matters. It is a long-standing practice in our jurisprudence to avoid constitutional questions when they are unnecessary to the disposition of a case
 
 
 [2]
 We have carefully reviewed the record including the entire transcripts of Schanou's deposition and the deposition of his son. We have found no evidence that either Schanou or his son feared exposure to the yearly bible distribution, or that Schanou withdrew his son from the school district in order to avoid exposure to the bible distribution. Schanou has consistently maintained, throughout this litigation, that he withdrew his son in May 1990 because of his objection to the policy, and not because the policy continued to affect or might affect his son
 
 
 [3]
 Schanou may well have been able to allege facts which would confer parental standing upon him to challenge the maintenance of the bible distribution policy after May 1989. However, Schanou has simply failed to satisfy this burden
 
 
 [4]
 We express no opinion as to the constitutionality of the school district's policy because we have disposed of the present case without reaching the merits of the constitutional challenge