**LOWER BRULE SIOUX TRIBE, Plaintiff,**

v.

**Ada E. DEER, et al., Defendants.**

**No. CIV 95–3034.**

United States District Court,
D. South Dakota,
Central Division.

Oct. 23, 1995.

---

Julian H. Brown, Pierre, SD, for plaintiff.

Thomas Lloyd, Pierre, SD, for defendants.

## MEMORANDUM OPINION AND ORDER

KORNMANN, District Judge.

### INTRODUCTION

Plaintiff filed a complaint and motion for injunctive relief on October 13, 1995, seeking a temporary restraining order, a writ of mandamus, and permanent injunctive relief enjoining the Bureau of Indian Affairs (BIA) from issuing reduction in force (RIF) notices to BIA employees on the Lower Brule reservation. The Lower Brule Sioux Tribe (tribe) maintains the BIA was required to consult with the tribe prior to issuing any RIF notices. An amended complaint was filed October 16, 1995.

This matter came on for hearing on October 16, 1995. A further hearing was held on October 17, 1995. Prior to the hearing in this matter, RIF notices were delivered to six (6) BIA employees on the reservation. Plaintiff's motion for a temporary restraining order is therefore moot.

### BACKGROUND

Plaintiff tribe is a federally recognized Indian tribe organized pursuant to the Indian Reorganization Act of 1934. The Bureau of Indian Affairs of the United States Department of the Interior is the instrumentality of the United States government that performs the federal government's trust and other responsibilities toward American Indian tribes. The BIA has twelve area offices across the United States to administer those trust responsibilities. One such area office is in Aberdeen, South Dakota. One of the local agencies within the Aberdeen Area is the Lower Brule agency on the Lower Brule Sioux Indian Reservation in South Dakota. This local office was established in 1970.

There are 43 authorized BIA positions in the Lower Brule local agency. Six RIF notices were issued on October 16, 1995, to employees in the Lower Brule local agency. The positions affected were the secretary to the superintendent, the secretary for the criminal investigation support staff, the civil engineering technician and one secretary, the realty officer, and the range technician. All six positions being eliminated are now occupied by BIA employees. When an existing position is eliminated, the BIA implements its "bump and retreat" policy, under which an employee occupying an eliminated position may bump another employee with less seniority, assuming a lower level position exists for which the reduced employee is qualified. Each of the six employees was given notice by letter of a job offer under the "bump and retreat" policy, if such a job will be available. The employee must respond within five days whether he or she elects to accept the offer. In any event, the employees' current positions will vanish sixty days after the RIF notices. That date is December 16, 1995.

### JURISDICTION

Subject matter jurisdiction exists under 28 U.S.C. §§ 1331 (federal question), 1346 (United States as defendant) and 1362 (civil action brought by an Indian tribe). The tribe also argues that jurisdiction is justifiable under 5 U.S.C. § 702, which establishes judicial review over federal agency action unless the action is committed to agency discretion or is exempted from judicial review by statute. 5 U.S.C. § 701(a)(2); *Lincoln v. Vigil*, 508 U.S. 182, 189, 113 S.Ct. 2024, 2030, 124 L.Ed.2d 101 (1993). The United States Supreme Court held in *Lincoln v. Vigil*, 508 U.S. at 193, 113 S.Ct. at

2032, that the way in which the BIA decides to expend its appropriation is "committed to agency discretion by law" and therefore not subject to judicial review. The tribe attempts, unsuccessfully, to distinguish *Vigil.* Nonetheless, jurisdiction is proper under 28 U.S.C. §§ 1331, 1346 and 1362.

## WRIT OF MANDAMUS

■ Before this Court may issue a writ of mandamus (under 28 U.S.C. § 1361) against an officer of the United States, the tribe must show (1) the officer has a clear and nondiscretionary duty to perform the act in question, (2) the patent violation of agency authority or manifest infringement of substantial rights, and (3) the tribe has no adequate alternative remedy. *Borntrager v. Stevas,* 772 F.2d 419, 420 (8th Cir.1985); *In re Sebben,* 815 F.2d 475, 478 (8th Cir.1987). There is no contention by defendants that the tribe has other administrative remedies available. Indeed, this is not a case where administrative proceedings are provided by statute. There is also no contention by defendants that consultation with the tribe occurred prior to the issuance of RIF notices. The issues before this Court are thus whether the defendants had a clear and nondiscretionary duty to consult with the tribe before the issuance of the six RIF notices and whether there has been the patent violation of agency authority or manifest infringement of substantial rights.

## A. GUIDELINES

The tribe initially set forth a very questionable basis for the alleged duty to consult. However, the BIA has provided the Court with a document entitled Declaration (Exhibit A). This document includes a very informative history as given by Hilda A. Manuel, Deputy Commissioner of Indian Affairs, BIA. It includes various attached documents, including a document entitled *"Guidelines For Consultation With Tribal Groups on Personnel Management Within the Bureau of Indian Affairs."* The Court commends the BIA and the U.S. Attorney's Office for candor. They have acted in a most professional manner in connection with this litigation. These guidelines became effective May 5, 1972.

BIA policy is further explained in various directives. A memorandum of May 5, 1972, which accompanied the guidelines of the same date sets forth a policy of "consultation on general personnel programs." The policy of the BIA is there expressed as a policy "of tribal involvement in Indian programs and in the operation of activities providing services to Indian people." Clearly, what was done as to the RIF in question falls within these policies of consultation and solicitation of advice. A letter of the same date from the then BIA Commissioner also pledges to all tribal chairmen the "Bureau's policy on tribal consultation in matters involving personnel management." The BIA expresses that they are "committed to a policy of tribal involvement in Indian programs and in the operation of activities providing services to Indian people." The same letter makes it clear that one of the most important parts of "this policy" is "consultation on general personnel programs." What the BIA is attempting to accomplish by this 1995 RIF comes within these policies and promises. It is true that the May 5, 1972, guidelines themselves state that tribes should "normally" only be consulted on recommendations for the selection of the positions of Area Director, Agency Superintendent, and School Superintendent. The RIF does not involve selections for positions but the elimination of positions. There is no "limiting language" as to a consultation being required only as to a RIF involving only higher level employees. Numbered paragraph 6 c. of the 1972 guidelines also provides, inter alia: "There may be circumstances when it is necessary to make personnel changes without consultation with the tribe. In such a case management will advise the tribe of the action and the reasons." No reasons were offered to the tribe or to this Court as to why it was necessary to undertake this RIF without advance consultation. The Court finds there were no reasons. It would have been a relatively simple matter to have done so. The decision to undertake this RIF was obviously under consideration as early as June 21, 1995, as witnessed by the memorandum of such date (attachment 2 to the Manuel declaration). A final BIA decision had been made by the memorandum of August 31, 1995 (attachment

4 to the Manuel declaration). Yet there was no consultation with the tribe throughout these months and the RIF was not actually implemented until October 16, 1995. There is a further violation of numbered paragraph 6c. of the 1972 guidelines since "management" has yet to advise the tribe of the "action and the reasons."

The BIA broadened the 1972 guidelines and policies, to the benefit of the tribe. The acting Deputy Commissioner of Indian Affairs declared, in a memorandum of March 9, 1977, that "consultation is intended to mean providing pertinent information to and obtaining the views of tribal governing bodies." Further, the Department of the Interior Departmental Manual provides in Part 512, Chapter 2, Departmental Responsibilities for Indian Trust Resources, that "It is the policy of the Department of the Interior ... to consult with tribes on a government-to-government basis whenever plans or actions affect tribal trust resources, trust assets, or tribal health and safety." Section 2.4B provides:

> "In the event an evaluation reveals any impacts on Indian trust resources, trust assets, or tribal health and safety, bureaus and offices must consult with the affected recognized tribal government(s).... All consultations will be conducted in an open and candid manner respectful of tribal sovereignty, so that all interested parties may evaluate for themselves the potential impact of the proposal on trust resources."

Order No. 3175, dated November 9, 1993, clarifies the responsibility of the BIA with respect to trust resources and states at § 3:

> "Bureaus and offices are required to consult with the recognized tribal government with jurisdiction over the trust property that the proposal may affect .. if their evaluation reveals any impacts on Indian trust resources. All consultations with tribal governments are to be open and candid so that all interested parties may evaluate for themselves the potential impact of the proposal on trust resources."

 The BIA's interpretation of its own regulations and policies is generally accorded great deference unless that interpretation "is inconsistent with the statute under which the regulations were promulgated, is plainly inconsistent with the wording of the regulation, or otherwise deprives affected parties of fair notice of the agency's intentions." *Oglala Sioux Tribe of Indians v. Andrus,* 603 F.2d 707, 718 (8th Cir.1979). Fair notice of agency intentions requires telling the truth and keeping promises. Under the facts before the court, the BIA's interpretation of the guidelines as set forth in its policy manual and order is that prior consultation is required before taking any action that affects or that may affect trust resources, trust assets or tribal health and safety. In addition, the BIA in years past has consulted (in advance) before acting on any personnel matter, including one clerk's status at Lower Brule. This is further evidence of the BIA's interpretation.

In a case concerning consultation under the less expansive 1972 guidelines, the Eighth Circuit Court of Appeals, quoting in part from *Morton v. Ruiz,* 415 U.S. 199, 236, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974), held in *Oglala Sioux Tribe of Indians v. Andrus,* 603 F.2d 707 (8th Cir.1979) that

> "where the Bureau has established a policy requiring prior consultation with a tribe, and has thereby created a justified expectation on the part of the Indian people that they will be given a meaningful opportunity to express their views before Bureau policy is made, that opportunity must be afforded. Failure of the Bureau to make any real attempt to comply with its own policy of consultation not only violates those general principles which govern administrative decisionmaking, 'but also violates the distinctive obligation of trust incumbent upon the Government in its dealings with these dependent and sometimes exploited people.'"

*Oglala Sioux Tribe of Indians v. Andrus,* 603 F.2d at 721, citations omitted.

The BIA now contends the guidelines and policies do not have the force of law and thus create no duty upon the BIA which would support the tribe's complaint, relying upon *Hoopa Valley Tribe v. Christie,* 812 F.2d 1097 (9th Cir.1986). In *Hoopa Valley,* the Ninth Circuit held that the guidelines, be-

cause they are in letter form and unpublished, merely give direction to the BIA but do not establish legal standards that can be enforced against the BIA. *Hoopa Valley Tribe v. Christie,* 812 F.2d at 1103. The Ninth Circuit attempted to distinguish the Eighth Circuit's holding by relying on the BIA's concession in *Oglala* that the guidelines are binding and the lack of such concession in *Hoopa Valley.* This Court is bound by the Eighth Circuit's holding in *Oglala* and rejects the Ninth Circuit's decision in *Hoopa Valley.* The BIA is not to be permitted to disavow its own policies and directives. The BIA could easily at any time have narrowed or eliminated guidelines, memorandums, directives, policies and promises of meaningful consultation. They did not do so, even after *Oglala* was decided. The guidelines and policies clearly embody the policy of the BIA, as also demonstrated by Order No. 3175 of November 8, 1993, and the departmental manual.

Joe Walker, acting Director of the Aberdeen Area, testified that two of the positions eliminated, namely realty officer and range technician, involve responsibilities over trust properties, thus affecting trust assets. Two other positions, civil engineering technician and secretary, have responsibilities concerning roads through trust properties, and also thus affect trust assets. Under U.S. Department of the Interior order number 3175 (a part of attachment 5 of the Manuel declaration) consultation is required if there are "any impacts" or any "potential" impacts. One position reduced was the secretary under the category of criminal investigation support staff. That position affects tribal safety. Elimination of these positions may not be accomplished in the absence of meaningful advance consultation.

It is clear to this Court that the BIA acted at its peril. Hilda Manuel, Deputy Commissioner of Indian Affairs, in a September 12, 1995, memorandum to all Area Directors stated, "I fully appreciate the precarious position inherent in the decision to move forward without consulting with the Tribes." This Court agrees. It was a precarious position. It was also in violation of tribal rights. As already discussed, the Deputy Commis-

sioner of Indian Affairs issued a directive dated August 31, 1995, mandating reductions in force throughout the country. The decision was made by the BIA at least by August 31, 1995. By at least September 12, 1995, Hilda Manuel recognized that such action was a precarious position. Prior consultation could and should have taken place certainly between September 12, 1995, and October 16, 1995. Mr. Walker, the Aberdeen Area acting Director, could not articulate why no consultation was accomplished, given the liberal view of and the quickness with which consultation could have occurred. This Court also can not articulate any reason for the total failure to consult, much less the failure to warn or advise. The Court is further troubled by the BIA's failure to comply with its other policies in initiating the RIF notices, including failing to give five working days (as distinguished from five calendar days which included weekend days) notice to the local union before the notices were issued. The tribe was also entitled to notice of the notice to union officials. See March 9, 1977, BIA Memorandum. Numbered paragraph 7 of the 1972 guidelines also requires the BIA to advise the tribe as to who has authority to take BIA action on recommendations. Guidelines § 8 requires the BIA to keep tribes advised of significant circumstances affecting employees or overall staffing. The BIA ignored its own rules and representations and violated its obligations of trust and fiduciary obligations.

## PRESIDENTIAL MEMORANDUM

President Clinton issued a memorandum on April 29, 1994, "outlining principles that executive departments and agencies, including every component bureau and office, *are to follow* in their interactions with Native American tribal governments." (emphasis supplied) The President stated, inter alia, that

"executive branch activities shall be guided by the following:

\* \* \* \* \* \*

(b) Each executive department and agency shall consult, to the greatest extent practicable and to the extent permitted by law, with tribal governments prior to taking

actions that affect federally recognized tribal governments. . . ."

The tribe contends the presidential memorandum requires prior consultation. The tribe fails in this contention unless the memorandum implies a private right of action and the tribe has standing. *Acevedo v. Nassau County, New York*, 500 F.2d 1078, 1082 (2nd Cir.1974). The tribe "must allege they have suffered an 'injury in fact' and that they seek to protect an interest 'arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Id.*, citing *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). Clearly, the tribe satisfies the "zone of interests" test. Based upon the testimony of the Lower Brule Sioux Tribal Chairman as to the impact the reduction in force will have on the tribe, the tribe will suffer an injury in fact different from the general public.

█ The presidential memorandum of April 29, 1994, does not, however, create any enforceable duty. Executive orders without specific foundation in congressional action are not judicially enforceable in private civil suits. *In Re Surface Min. Regulation Litigation*, 627 F.2d 1346, 1357 (D.C.Cir.1980). As argued by both the tribe and the BIA, this executive memorandum was intended primarily as a political tool for implementing the President's personal Indian affairs policy and not as a legal framework enforceable by private civil action. See *Independent Meat Packers Ass'n v. Butz*, 526 F.2d 228, 236 (8th Cir.1975), cert. denied, 424 U.S. 966, 96 S.Ct. 1461, 47 L.Ed.2d 733 (1976). The memorandum is, however, further evidence of BIA policy, the interpretation of BIA policy by the BIA and by the federal government and the tribe's reliance thereon.

### BIA MOTIVES

█ The tribe argues the RIF was not required, even under the Senate's proposed 1996 budget cuts. The tribe presented an abundance of evidence and argued that the BIA's decision to accomplish a RIF was motivated not by the proposed Senate budget cuts, but rather by the BIA's focus upon reducing the size of the BIA's bureaucracy, as set forth in Assistant Secretary of Interior Ada Deer's letter of November 10, 1994, to tribal leaders. Interior Secretary Bruce Babbitt ordered the BIA to scrap its streamlining plan in March, 1995, but the tribe argues the RIF was nevertheless motivated by Vice-President Gore's National Performance Review reductions. This Court finds that the BIA's actions in issuing RIF notices was not arbitrary, capricious or an abuse of discretion, but for the violations already enumerated. Normally, any federal agency may downsize without consultations. Indeed, the BIA has the authority to determine "when there is a surplus of employees at a particular location in a particular line of work." 5 CFR § 351.201(a)(1). The BIA is unlike any other agency, however, and, as set forth above, reducing the number of employees may not be accomplished without meaningful prior consultation with the tribe. That is not to say the BIA must obey those who are consulted or that the BIA must accept their advice. *Hoopa Valley Tribe v. Christie*, 812 F.2d at 1103.

### MEANINGFUL CONSULTATION

█ Consultation, as described by the tribal chairman, Michael B. Jandreau, would amount to a meeting between the superintendent of the Lower Brule agency and the Tribal Council. Consultation has occurred in the past, which consultation comprised a one to two hour meeting, not more than one half day, during which meeting the superintendent notifies the Council of the BIA's proposed action, justifying his reasoning. The Tribal Council may either issue a motion or resolution of support for the decision, or reject the decision. The tribe recognizes that the BIA need not obey the Council's decision. See *Hoopa Valley Tribe v. Christie*, 812 F.2d at 1103. Meaningful consultation means tribal consultation in advance with the decision maker or with intermediaries with clear authority to present tribal views to the BIA decision maker. The decision maker is to comply with BIA and administration policies.

## ORDER

The RIF notices issued to BIA employees at the Lower Brule agency on October 16, 1995, are invalid due to the BIA's failure to follow its own guidelines and policies, including affording the tribe meaningful prior consultation regarding these staffing decisions. The Tribe has no other plain, speedy, and adequate remedy, in the ordinary course of law. A writ of mandamus hereby issues requiring the defendants to engage in meaningful, prior consultation pursuant to BIA policies and guidelines before issuing any further RIF notices to employees at the Lower Brule agency and before attempting to take further actions in connection with the RIF notices already issued to Lower Brule Agency employees.

Dated this 20th day of October, 1995.