**WINNEBAGO TRIBE OF NEBRASKA,**
Plaintiff,

v.

**Bruce BABBITT, Secretary of the Department of Interior, sued in his official capacity, Defendant.**

No. CIV 95–1042.

United States District Court,
D. South Dakota,
Northern Division.

Jan. 17, 1996.

160

Vernle C. Durocher, Jr. and Clifford S. Anderson, Dorsey & Whitney P.L.L.P., Minneapolis, MN, Kennith L. Gosch, Bantz, Gosch, Cremer, Peterson & Oliver, Aberdeen, SD, for plaintiff.

· James J. Gilligan, United States Department of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

KORNMANN, District Judge.

### INTRODUCTION

Plaintiff filed a complaint and motion for injunctive relief on November 17, 1995, seek-

ing a temporary restraining order, a writ of mandamus, and permanent injunctive relief enjoining the Bureau of Indian Affairs (BIA) from enforcing hiring freezes or reduction in force (RIF) notices to employees at the Winnebago, Nebraska, agency and from implementing any new hiring freezes or issuing new RIF notices without engaging in prior meaningful consultation. The Winnebago Tribe of Nebraska (tribe) maintains the BIA was required to consult with the tribe prior to instituting a hiring freeze or issuing RIF notices.

This matter came on for hearing on November 30, 1995. Prior to the hearing, the Court was advised that the RIF terminations of employment had been delayed from December 16, 1995 until January 2, 1996. News reports indicate the RIF has been further delayed until February. Counsel have not communicated such fact to the Court.

## BACKGROUND

The facts in this case are substantially similar to the facts in *Lower Brule Sioux Tribe v. Ada Deer*, 911 F.Supp. 395 (S.D. 1995). As in *Lower Brule*, the Winnebago, Nebraska, agency is a local agency within the Aberdeen Area. There are thirty-seven (37) authorized BIA positions in the Winnebago local agency. On March 13, 1995, the Secretary of the Department of Interior issued a department-wide hiring freeze in anticipation of a reduced budget. Acting on the Secretary's instructions, Hilda Manuel, the Deputy Commissioner of Indian Affairs, Bureau of Indian Affairs, issued a notice to all area directors advising them of the freeze. The freeze affected eight (8) positions at the Winnebago agency: two (2) police officers, three (3) secretaries, an administrative file clerk, a contract specialist, and a property clerk.

On June 21, 1995, the Assistant Secretary, Policy, Management & Budget, issued a memorandum to all Department of Interior employees notifying them that a RIF must be planned. The Department did not consult as to this RIF with any tribe. On July 18, 1995, the House of Representatives passed a Department of Interior appropriations bill which reduced funding for the BIA $50 million below the FY 1995 budget. The Department did not consult with plaintiff in response to the possible budget cut. On August 9, 1995, the Senate passed an appropriations bill (the Senate mark) which reduced BIA funding $270 million below BIA's FY 1995 budget. The Senate mark proposed a $206 million cut in Tribal Priority Allocations (TPA), which covers funding for human services, education, public safety and trust management programs.

On August 25, 1995, Hilda Manuel sent a memorandum to all area directors and agency superintendents, notifying them that with the pending possibility of a RIF, they were to notify employees to make sure their employment records were accurate and up to date (to correctly reflect their seniority, educational attainments, performance ratings, and preferences). Again, the BIA failed to consult with any tribe, despite other preparations for the RIF. On August 28, 1995, Hilda Manuel, in response to the Senate mark, held a conference call with all area office directors notifying them the decision had been made to implement a bureau-wide RIF. Despite setting forth very specific directions in implementing the RIF in her August 31, 1995, memorandum to the area office directors, she made no mention of consulting with any tribe.

On August 29, 1995, Joe B. Walker, then acting Area Director for the Aberdeen Area, held a conference call with the Aberdeen Area agency superintendents, including Russell Bradley, Winnebago Agency Superintendent. Walker followed that conference call with a memorandum on August 30, 1995, directing the local agency superintendents to prepare retention registers and to submit budget information and organizational charts by August 31, 1995. The Aberdeen Area's "re-engineering team," out of the Aberdeen office, sent a proposed organizational chart to the Winnebago superintendent.

The Aberdeen Area office determined, without consulting with plaintiff, that twelve (12) positions were to be eliminated at the Winnebago agency. These twelve positions included the eight positions which were previously the subject of a hiring freeze, along with two secretaries, one of whom provides support services for the police department,

the only heavy mobile equipment operator (roads), and a program assistant. In addition, three other employees were given notice of displacement because three of the employees whose positions were abolished were entitled to bump other employees with less seniority.

Superintendent Bradley sent a memo to Acting Director Walker on September 11, 1995, complaining about the proposed abolishments, stating the "re-engineering team is creating Agency's [sic] based upon unknown criteria and their version of Agency/Tribal relations." Bradley also complained the team's proposed cuts were not conducive to BIA/Tribal relations.

On September 12, 1995, Hilda Manuel advised all area directors she expected full and complete cooperation in the decision to implement the RIF despite "the precarious position inherent in the decision to move forward without consulting with the Tribes." Ms. Manuel also expressed her dissatisfaction with some area directors' proposals to abolish police officers, among other positions, in key program areas in Trust and Indian Services programs. On September 18, 1995, the House–Senate conference passed a Department of Interior appropriation bill reducing the cut to approximately $117 million. Under the conference legislation, sufficient funds would be restored to the Winnebago agency to retain all positions that were described in the RIF. Hilda Manuel, on October 3, 1995, issued a memo to all area directors stating that, due to the delay in the 1996 appropriations bill, there existed an opportunity to consult. Area directors were directed to consult with the tribes, giving them an opportunity to reflect their priorities in the distribution of the RIF. No consultation followed with the Winnebago tribe. Acting Director Walker contacted all agency superintendents, including Bradley, advising them to consult with the tribes. The tribes were to be given an opportunity to shift the funds within the TPA programs to insert funds into programs where BIA employees had been selected for RIF, thereby making it possible to retain those positions if the tribes wished. The superintendent at Winnebago delayed consulting with the tribe. Hilda

Manuel notified then Acting Director Walker that the Aberdeen personnel office's RIF plan had been approved and authorized the RIF notices to be issued on October 11, 1995.

On October 14, 1995, RIF notices were issued to the four Winnebago agency employees set forth above, along with the three "bump notices". Finally, on November 1, 1995, Bradley initiated "consultation" with the tribe, after the decision had already been made as to which positions would be eliminated. On November 20, 1995, Hilda Manuel delayed the effective date of employee terminations of employment to January 2, 1996. The Court takes judicial notice that no employees will be terminated pursuant to the RIF until February of 1996.

## DISCUSSION

### I. JURISDICTION

"Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and statutes enacted by Congress pursuant thereto." *Marine Equipment Management Co. v. U.S.*, 4 F.3d 643, 646 (8th Cir.1993), citing *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501, *reh'g denied* 476 U.S. 1132, 106 S.Ct. 2003, 90 L.Ed.2d 682 (1986), citing in turn *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). "The threshold inquiry in every federal case is whether the court has jurisdiction" and the Eighth Circuit has "admonished district judges to be attentive to a satisfaction of jurisdictional requirements in all cases." *Rock Island Millwork Co. v. Hedges–Gough Lumber Co.*, 337 F.2d 24, 26–27 (8th Cir.1964); *Sanders v. Clemco Industries* 823 F.2d 214, 216 (8th Cir.1987).

### A. BASIS

The tribe seeks an injunction pursuant to Fed.R.Civ.P. 65 and mandamus pursuant to 28 U.S.C. § 1361. The tribe claims subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1361 (writ of mandamus) and 28 U.S.C. § 1362 (civil action brought by an Indian tribe). This Court held in *Lower Brule* at

397–98 that jurisdiction was proper under the three foregoing statutes and so holds herein.

## B. RIPENESS

Defendant contends this matter is not ripe for adjudication because the actual terminations of employment would not occur until January 2, 1996 (now moved to February of 1996). Further, if the conference committee budget is passed, no RIF would be necessary at the Winnebago office.

■■■ Article III of the United States Constitution imposes a "case or controversy" requirement upon the federal courts. Ripeness is one such doctrine to determine justiciability. *Schanou v. Lancaster County School District No. 160,* 62 F.3d 1040, 1042 (8th Cir.1995). The "ripeness doctrine is drawn from constitutional limitations of Article III on judicial power as well as discretionary reasons of policy for refusing to exercise jurisdiction. It embodies a policy under which courts avoid passing upon constitutional questions in advance of the strictest necessity for deciding them." *Bergstrom v. Bergstrom,* 623 F.2d 517, 519 (8th Cir.1980) (citations omitted). "[R]ipeness is peculiarly a question of timing." *Thomas v. Union Carbide Agr. Products Co.,* 473 U.S. 568, 580, 105 S.Ct. 3325, 3332, 87 L.Ed.2d 409 (1985), quoting *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 140, 95 S.Ct. 335, 357, 42 L.Ed.2d 320 (1974). "[I]ts basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Id.,* quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

■■■ Defendant contends that since the budget cuts may never occur, the RIF may not be fully implemented, and this matter is therefore not ripe. Defendant misunderstands the issue here. First, the decision has already been made to reduce the number of employees bureau-wide. That decision is not at issue since the BIA may reduce the number of its employees, *Lower Brule,* at 401. Therefore, whether or not the final implementation of the RIF is recalled at the last hour by not actually terminating the employees is immaterial. What the BIA cannot do, however, is reduce the number of employees to this extent at the Winnebago agency without first consulting with the tribe. The decision has been made to reduce twelve positions at the Winnebago agency and that decision was made without prior consultation. The fact that the BIA may rescind that decision before the employees who occupied those positions are finally told to go home, or even after the positions have been vacated, does not preclude review under these circumstances.

## C. SOVEREIGN IMMUNITY

■■■ The waiver of sovereign immunity is a prerequisite to this Court's jurisdiction over the plaintiff's complaint. "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without consent of Congress." *Block v. North Dakota,* 461 U.S. 273, 287, 103 S.Ct. 1811, 1819–20, 75 L.Ed.2d 840 (1983).

> Notwithstanding that the United States is not a named party, "a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration' ... or if the effect of the judgment would be 'to restrain the government from acting, or to compel it to act.' "

*Coggeshall Development Corp. v. Diamond,* 884 F.2d 1, 3 (1st Cir.1989), quoting *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963). Although this action seeks to compel the Secretary of the Interior to perform a ministerial duty owed to the tribe, the real party defendant is the United States. Any injunction or writ of mandamus issued would be a "restraint on the government from acting or [would] compel it to act." *Coggeshall Development Corp. v. Diamond,* 884 F.2d at 4.

■■■ This district has previously addressed the issue of sovereign immunity in a suit to compel the Secretary of the Interior, through Bureau of Indian Affairs subordinates, to comply with their fiduciary duties and afford plaintiffs a due process hearing in *Coomes v. Adkinson,* 414 F.Supp. 975 (D.S.D.1976). There, Judge Bogue held that "[s]overeign immunity does not bar a claim which is not

affirmative in nature but rather only requires the defendant officers to cease unauthorized action." *Coomes v. Adkinson,* 414 F.Supp. at 982, citing *State Highway Commission of Missouri v. Volpe,* 479 F.2d 1099, 1123 (8th Cir.1973). There, as here, the plaintiffs

> *are not seeking money damages from the government,* nor are they seeking to assert some right against it or to block a government project. The relief they seek does not in any way affect the sovereign power of the United States. The government is not asked to give up a right, to grant a concession, to dispose of property or relinquish authority.

*Coomes v. Adkinson,* 414 F.Supp. at 982, quoting *Rockbridge v. Lincoln,* 449 F.2d 567, 573 (9th Cir.1971). In this case, a "government project" may be blocked until after the government does what it has promised many times to do—engage in meaningful consultation with the tribe. The "blocking" is not necessarily permanent or even of long duration. The government is not being asked to give up anything or to relinquish any authority. The government has, for many years and on many occasions, promised to consult in advance. They, so to speak, made their own bed, their own promises and their own Federal policies which created a justified expectation on the part of Indian tribes and Indian people. They also failed to change these policies after *Oglala Sioux Tribe of Indians v. Andrus,* 603 F.2d 707 (8th Cir.1979). Sovereign immunity does not apply in this case.

■ Sovereign immunity does not apply in other instances. "There may be, of course, suits for specific relief against officers of the sovereign which are not suits against the sovereign." *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 689, 69 S.Ct. 1457, 1461, 93 L.Ed. 1628 (1949). "However, to come within this 'special relief' exception a claimant must allege and prove that the officer has acted outside of the scope of his authority." *Coggeshall,* 884 F.2d at 3, citing *Larson,* 337 U.S. at 690, 69 S.Ct. at 1461. The tribe alleges the BIA, an agency of the Department of the Interior, and the Department acted outside the scope of their authority when they instituted a hiring freeze and a RIF without prior consul-

tation with the tribe. These actions were instituted by Bruce Babbitt and Hilda Manuel, specific officers of these agencies. If it is established that such conduct is outside the scope of their authority, sovereign immunity would not bar the tribe's claims for relief. "Of course, a suit may fail, as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property." *Johnson v. Mathews,* 539 F.2d 1111, 1124 (8th Cir.1976). The relief requested is for an injunction prohibiting further action as to hiring freezes and the RIF, prohibiting new hiring freezes or a RIF without prior consultation, and for a writ of mandamus ordering consultation before further action is taken as to hiring freezes and the RIF in the Winnebago Agency. This relief would not require affirmative action on the part of the sovereign. They may or may not decide to consult. They would not be ordered to do anything they have not already promised and agreed to do.

■ Even if the "specific relief" exception does not apply, sovereign immunity may nonetheless be waived. Waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). "A necessary corollary of this rule is that when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed...." *Block v. North Dakota,* supra.

■ The existence of federal question jurisdiction does not remove the barrier of sovereign immunity. *Murray v. United States,* 686 F.2d 1320, 1324 (8th Cir.1982). Further, it is well settled that 28 U.S.C. § 1361 does not constitute a waiver of sovereign immunity. *Essex v. Vinal,* 499 F.2d 226, 231 (8th Cir.1974); *State Highway Commission v. Volpe,* 479 F.2d 1099, 1123 (8th Cir.1973). "It merely establishes a subject matter that is within the competence of federal courts to entertain. It does not expand

the power of those courts in terms of the parties over whom it may exercise jurisdiction." *Coggeshall,* 884 F.2d at 4.[1] Finally, 28 U.S.C. § 1362 is not a waiver of sovereign immunity. *Rosebud Sioux Tribe v. U.S. Bur. of Indian Aff.,* 714 F.Supp. 1546, 1553 (D.S.D.1989). The tribe does not dispute that these jurisdictional statutes do not waive sovereign immunity.

■■■■ The tribe contends the defendant has waived sovereign immunity pursuant to the judicial review provisions of the Administrative Procedure Act. That statute provides in part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702. Section 702 is a broad waiver of the government's sovereign immunity in cases challenging agency action. *Black Hills Institute of Geological Research v. South Dakota School of Mines and Tech.,* 12 F.3d 737, 740 (8th Cir.1993). The waiver of sovereign immunity in § 702 is not limited to suits brought under the APA. *Red Lake Band of Chippewa Indians v. Barlow,* 846 F.2d 474, 476 (8th Cir.1988); *Specter v. Garrett,* 995 F.2d 404, 410 (3rd Cir.1993), rev'd on other grounds —— U.S. ——, 114 S.Ct. 1719, 128 L.Ed.2d 497 (1994), cited with approval in

*Black Hills,* 12 F.3d at 740. The waiver applies to every "action in a court of the United States seeking" relief from agency action taken outside the scope of authority. 5 U.S.C. § 702. Waiver "is dependent on the suit against the government being one for non-monetary relief." *Red Lake Band v. Barlow,* 846 F.2d at 476.[2]

■■■■ The APA is inapplicable when (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law. 5 U.S.C. § 701(a). Defendant contends both exceptions apply to withdraw the applicability of the APA as a basis of waiver of sovereign immunity. Defendant claims the Civil Service Reform Act of 1978, P.L. 95–454 ("CSRA"), bars review of personnel decisions and procedures under the APA, thus precluding review herein. Defendant misunderstands the nature of the claim herein. It is not the decision to issue the RIF or the procedure for implementing the RIF which is the subject of this action. Instead, it is the defendant's failure to comply with the duty to consult with the tribe prior to making the decision which is at issue. In any event, jurisdiction under the CSRA is dependent upon whether the plaintiff is an employee. *Ayrault v. Pena,* 866 F.Supp. 372, 375 (N.D.Ill.1994). The tribe is not an employee and does not seek to enforce employment rights. The CSRA does not bar review in this case.

■■■■ Defendant further contends the decision to issue a RIF is committed to agency discretion by law, thus precluding review. It is true that the decision to issue a RIF is committed to agency discretion by law. *Lower Brule,* at 397–98. However, this suit is not about the decision to reduce the number of employees at the Winnebago Agency.

---

1. But see *Vishnevsky v. United States,* 581 F.2d 1249, 1255 (7th Cir.1978) (The theory of sovereign immunity "does not apply to actions for mandamus." This theory "has no reference to and does not include those cases in which officers of the United States are sued, in appropriate form to compel them to perform some ministerial duty imposed upon them by law, and which they wrongfully neglect or refuse to perform. Such suits would not be deemed suits against the United States within the rule that the government cannot be sued except by its consent." *Id.,* quoting *Minnesota v. Hitchcock,* 185 U.S. 373,

386, 22 S.Ct. 650, 655, 46 L.Ed. 954 (1902). The Seventh Circuit rejected *Essex v. Vinal,* 499 F.2d 226 (8th Cir.1974) because it failed to address the "long line of authorities" set forth in *Vishnevsky,* all of which predated the 1962 enactment of 28 U.S.C. § 1361.

2. Therefore, the defendant's contention that this Court's holding in *Lower Brule,* implies that jurisdiction is not proper under 5 U.S.C. § 702 does not prevent reliance upon that statute for the waiver of sovereign immunity.

What is at issue here is the failure to consult with the tribe prior to making that decision. That is a non-discretionary duty. The waiver of sovereign immunity set forth in § 702 is applicable herein.

## II. VENUE

■ Defendant contests venue in the District of South Dakota since the tribe is a Nebraska tribe and the defendant resides in Washington, D.C. Venue herein is dependent upon 28 U.S.C. § 1391(e). That statute, as amended December 1, 1990, provides, in part:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

The Eighth Circuit has not analyzed a case under § 1391(e)'s new "substantial part of the events or omissions giving rise to the claim" language. The December 1990 amendments substituted similar language in subsections (a) (civil action founded on diversity) and subsection (b) (civil action not founded solely on diversity), replacing the prior "claim or cause of action arose" standards. The Eighth Circuit analyzed the new venue provisions in a case concerning the new provisions of § 1391(a)(2). See *Setco Enterprises v. Robbins*, 19 F.3d 1278 (8th Cir.1994). The Circuit Court held that "[u]nder the amended statute, we no longer ask which district among two or more potential forums is the 'best' venue ... Rather, we ask whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." This case is instructive here.

■ The amended venue statute was intended to expand the number of venues available to a plaintiff. *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir.1995). This Court will consider all the events giving rise to the tribe's claim, not just the actions of the Secretary of the Interior, in order to determine whether the tribe has shown that a "substantial part of the events or omissions giving rise to the" tribe's claim occurred in South Dakota. *Andrean v. Secretary of the United States Army*, 840 F.Supp. 1414, 1422 (D.Kan.1993), *Setco*, 19 F.3d at 1281. The substantial omission giving rise to the tribe's claim is the failure of anyone in the Department of the Interior, Bureau of Indian Affairs to consult with the tribe. Tribal Chairman John Blackhawk testified that consultation, when it occurs, occurs between the tribal council, the superintendent, and the director of the Aberdeen Area Office. This is consistent with the tribe's interest in meaningful consultation, that is, consultation with those with the decision-making authority. That consultation is the responsibility of the Aberdeen Area Director is evident from Hilda Manuel's October 3, 1995, memorandum to the area directors requiring "[All Area Directors] meet with the tribes in your area, and accomplish the following actions: 1) consult with tribes; 2) spread the Conference mark reflecting tribal priorities; and 3) spread and rank the specified increments." Since consultation is the responsibility of the Aberdeen Area Director in this case, and consultation usually occurs with the Aberdeen Area Director, the omission to consult occurred in this district. Further, the Aberdeen Area Office made the decision as to which positions would be subject to the RIF. This is precisely the decision as to which the tribe wants to consult. The RIF notices were issued from the Aberdeen director. The fact that they were distributed by the superintendent in Winnebago, Nebraska, does not operate to prevent venue here, as argued by defendant, any more than the postal service's delivery of letters absolves the actions of those who send mail. The decision as to which positions were to be reduced was made in Aberdeen. A substantial part of the omissions and acts giving rise to the tribe's claim occurred in

the Northern Division of the District of South Dakota. Venue is therefore proper.

## III. INJUNCTION

 The tribe seeks preliminary and permanent injunctive relief and a writ of mandamus. Pursuant to Local Rule of Practice, these matters are deemed consolidated for trial. A necessary prerequisite to the issuance of an injunction is that a right must have been violated. *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir.1982). Further, the "drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights." *Rogers v. Scurr*, 676 F.2d at 1214.

 This Court has already ruled that Indian tribes have a right to prior consultation before the issuance of a RIF. See *Lower Brule*. The hiring freeze and RIF have already been implemented, notwithstanding that the employees will not be affected until February of 1996. An injunction preventing defendant from issuing a hiring freeze or RIF would be moot. This Court cannot say that there is a danger defendant will violate the government's responsibility to consult in the future.

## IV. WRIT OF MANDAMUS

 As in *Lower Brule*, before this Court may issue a writ of mandamus (under 28 U.S.C. § 1361) against an officer of the United States, the tribe must show (1) the officer has a clear and nondiscretionary duty to perform the act in question, (2) the patent violation of agency authority or manifest infringement of substantial rights, and (3) the tribe has no adequate alternative remedy. *Borntrager v. Stevas*, 772 F.2d 419, 420 (8th Cir.1985); *In re Sebben*, 815 F.2d 475, 478 (8th Cir.1987). As in *Lower Brule*, there is no contention by defendant that the tribe has other administrative remedies available. Indeed, this is not a case where administrative proceedings are provided by statute. It is clear that no consultation with the tribe occurred before the mandated hiring freeze and the issuance of the RIF. The issues before this Court, as in *Lower Brule*, are whether the government had a clear and nondiscretionary duty to consult with the tribe before the issuance of the hiring freeze and six RIF notices and whether there has been a patent violation of agency authority or manifest infringement of substantial rights.

As set forth in *Lower Brule*, the BIA has a policy of prior consultation with the tribes on general personnel programs, personnel management in the operation of activities providing services to Indian people, and whenever plans or actions affect tribal trust resources, trust assets, or tribal health and safety. That policy created an expectation on the part of the tribe and Indians that they would be consulted prior to the institution of any hiring freeze or the elimination of any positions falling within the policy. The positions affected by the hiring freeze and the RIF fall within the policy. Consultation did not occur despite the opportunity to do so. The Eighth Circuit Court of Appeals held in *Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707 (8th Cir.1979) that

"where the Bureau has established a policy requiring prior consultation with a tribe, and has thereby created a justified expectation on the part of the Indian people that they will be given a meaningful opportunity to express their views before Bureau policy is made, that opportunity must be afforded. Failure of the Bureau to make any real attempt to comply with its own policy of consultation not only violates those general principles which govern administrative decisionmaking, 'but also violates the distinctive obligation of trust incumbent upon the Government in its dealings with these dependent and sometimes exploited people.'"

*Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d at 721, citations omitted. The tribe had a justified expectation that it would be consulted prior to the implementation of the hiring freeze that left positions to be filled and prior to the implementation of the RIF. The defendant's failure to do so violated a substantial right of the tribe. The tribe is therefore entitled to a writ of mandamus. *Oglala* is the law which this Court must follow and which the government should have followed. It appears the BIA and the De-

**168**

partment of Interior learned little, if anything, from *Oglala,* or, for that matter, from *Lower Brule.*

## ORDER

The hiring freeze issued on March 13, 1995, affecting eight positions at the Winnebago agency and the RIF notices issued to BIA employees at the Winnebago agency on October 16, 1995, are invalid due to the BIA's failure to follow its own guidelines and policies, including affording the tribe meaningful prior consultation regarding these staffing decisions. The tribe has no other plain, speedy, and adequate remedy, in the ordinary course of law. A writ of mandamus hereby issues requiring the defendants to engage in meaningful prior consultation pursuant to BIA policies and guidelines before issuing any further hiring freezes or RIF notices affecting employees at the Winnebago agency and before attempting to take further actions in connection with the hiring freeze and RIF notices already issued to Winnebago agency employees.